1  McGREGOR W. SCOTT
   United States Attorney
2  QUINN HOCHHALTER
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

**FILED**

FEB 2 1 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11 IN THE MATTER OF THE EXTRADITION    MISC. NO.  2:20-MJ-039 ___ CKD
   OF
12                                     COMPLAINT FOR PROVISIONAL ARREST
   JOHN (JEAN) PAUL HALLEUX            WITH A VIEW TOWARDS EXTRADITION
13 A/K/A  JACK JOSEPH RIVARD
   A/K/A  THOMAS CARL COY              (18 U.S.C. § 3184)
14 A/K/A  JOSEPH PAUL HALLEAUX
   A/K/A  JEAN PAUL HALLEUX
15 A/K/A  JOHN PAUL JOSEPH HALLEUX
   A/K/A  J. RIVARD
16

17

18        I, the undersigned Assistant United States Attorney, being duly sworn, state on information and

19 belief that the following is true and correct:

20 1.        In this matter, I represent the United States in fulfilling its treaty obligation to Canada.

21 2.        There is an extradition treaty in force between the United States and Canada, the Treaty on

22 Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983,

23 *as amended by* the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S.

24 TREATY DOC. NO. 101-17 (1990), *and* the Second Protocol Amending the Extradition Treaty with

25 Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively, the "Treaty").

26 3.        Pursuant to the Treaty, the Government of Canada has submitted a formal request through

27 diplomatic channels for the extradition of John Paul Halleux ("HALLEUX").

28 4.        According to the information provided by the Government of Canada, HALLEUX was convicted

1   in that country for Possession of Housebreaking Instruments, contrary to the Criminal Code of Canada

2   (the "CCC") § 295(1), and Break and Enter with Intent, contrary to CCC § 306(1)(a).

3   5.      These offenses were committed within the jurisdiction of Canada. Specifically, the underlying

4   facts and procedural history of the convictions, according to the Canadian government, are as follows:

5       a.    On November 1, 1969, Ontario Provincial Police ("OPP") discovered that the front door

6   and glass window to the Post Office and General Store in Tupperville, Ontario, had been damaged.

7   While investigating, an OPP officer encountered HALLEUX present in a vehicle in front of the Post

8   Office and General Store. The OPP officer searched HALLEUX and recovered two screw drivers,

9   one pair of vice grips, and a blue wool glove. Damage marks to the molding of the front door of the

10   building matched the tools recovered from HALLEUX.

11       b.    On January 6, 1970, HALLEUX was convicted of Possession of Housebreaking

12   Instruments, in violation of section 295(1) of the CCC before the Criminal Court of Ontario in

13   Chatham, Ontario. The Court imposed a sentence of four years' imprisonment in connection with

14   this offense but HALLEUX was subsequently paroled on November 24, 1971.

15       c.    While still on parole related to his 1970 conviction in Ontario, HALLEUX was arrested

16   on March 27, 1972, in Fannystelle, Manitoba, in connection with a break-in. Royal Canadian

17   Mounted Police ("RCMP") officers were called to the Steven's Lumber Yard in Fennystelle in

18   response to a call that someone had broken into the building. Upon arriving at the scene, RCMP

19   officers witnessed an individual dive through a window of the office building. This individual was

20   later arrested outside of the building and identified himself as Jean Paul HALLEUX.

21       d.    On April 10, 1972, HALLEUX was convicted of Break and Enter with Intent, contrary to

22   section 306(1)(a) of the CCC, by the Provincial Court of Manitoba. He was sentenced to two years'

23   imprisonment at the Stony Mountain Institution, a federal penitentiary located in Manitoba.

24       e.    On September 1, 1973, HALLEUX escaped from the Stony Mountain Institution.

25       f.    The remaining period to be served on HALLEUX's sentence is 885 days of

26   imprisonment.

27   ///

28   ///

g.   On June 19, 2013, a Warrant of Apprehension and Recommitment to Custody in a Penitentiary under section 11.1 of the Corrections and Conditional Release Act of Canada was issued by Stony Mountain Institution.  This warrant against HALLEUX remains outstanding.

6.      The offenses of which HALLEUX were convicted are provided for in Article 2 of the Treaty.

7.      HALLEUX may be found within the jurisdiction of this court.  His last known address of record was 5704 Mist Court, Orangevale, California, 95662.

8.      Katherine C. Fennell, an Attorney-Adviser in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is requested are provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Canada, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

9.      The declaration from the U.S. Department of State, with its attachments, including a copy of the diplomatic note from Canada; a copy of the Treaty; and the certified documents submitted in support of the request (marked collectively as Government's Exhibit 1), are filed with this complaint and incorporated by reference herein.

///
///
///
///
///
///
///
///
///
///
///
///

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Canada, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered.

Quinn Hochhalter
Assistant United States Attorney
Eastern District of California

Sworn to before me and subscribed in my presence this ___ day of February, 2020, at Sacramento, California.

Carolyn K. Delaney
United States Magistrate Judge

DISTRICT OF COLUMBIA, ss:

## DECLARATION OF KATHERINE C. FENNELL

I, Katherine C. Fennell, declare and say as follows:

1. I am an Attorney-Adviser in the Office of the Legal Adviser, Department of State, Washington, D.C. This office has responsibility for extradition requests within the Department of State, and I am charged with the extradition case of John (Jean) Paul Halleux, alias Jack Joseph Rivard, alias Thomas Carl Coy, alias Joseph Paul Halleaux, Jean Paul Halleux, alias John Paul Joseph Halleux, alias J. Rivard. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Canada are found in the Extradition Treaty between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (the "1971 Treaty"), the Protocol Amending the Extradition Treaty with Canada of January 11, 1988, which entered into force on November 26, 1991 (the "1988 Protocol"), and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, which entered into force on April 30, 2003 (the "2001 Protocol") (collectively "The Treaty"). Copies of the Treaty and the Protocols are attached to this declaration.

3. In accordance with the provisions of the Treaty, the Canadian Embassy has submitted Diplomatic Note No. 6381, dated October 19, 2018, formally requesting the extradition of John Paul Halleux, and supplement Diplomatic Note No. 7013, dated March 20, 2019. Copies of the diplomatic notes are attached to this declaration.

4. In accordance with Article 17 of the 1971 Treaty, the Government of the United States provides legal representation in its courts for Canada in its extradition requests, and Canada provides legal representation in its courts for extradition requests made by the United States.

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

tify That Katherine C. Fennell, whose name is subscribed to the document hereunto annexed,
e time of subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of
ited States of America, and that full faith and credit are due to her acts as such.

*This certificate is not valid if it is removed or altered in any way whatsoever*

In testimony whereof, I, Michael R. Pompeo, Secretary of State ,
have hereunto caused the seal of the Department of State to be
affixed and my name subscribed by the Assistant Authentication
Officer, of the said Department, at the city of Washington, in the
District of Columbia, this tenth day of December, 2019.

*Michael R. Pompeo*

Secretary of State

By *Matthews*

Assistant Authentication Officer,
Department of State

Is      rsuant to CH        te of
Se      1789, 1 Stat         22
U       7; 22USC 265         USC
30      USC 1733 et. s       USC
14      RULE 44 Feder        of
C       cedure.

-2-

5. The offenses contained in Count I and Count II for which extradition is sought are covered under Article 2 of the Treaty. The offense contained in Count III is not forwarded to the court for consideration.

6. Documents submitted by the Government of Canada in support of its extradition request were certified on October 19, 2018, by Michael Barkin, Chargé d'Affaires of the United States of America in Ottawa, in accordance with Title 18, United States Code, Section 3190, and on March 19, 2019, by Kelly Craft, Ambassador of the United States of America in Ottawa, in accordance with Title 18, United States Code, Section 3190. Mr. Barkin, at the time of his certification, was the principal diplomatic officer of the United States in Canada, and Ambassador Craft, at the time of her certification, was the principal diplomatic officer of the United States in Canada.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December ___9___, 2019.

KATHERINE C. FENNELL

Attachments:

1. Copies of the Notes
2. Copies of Treaty and Protocols

EXT - HALLEUX - 00004



Embassy of Canada          Ambassade du Canada

Note No. 6381

　　　　　The Embassy of Canada presents its compliments to the Department of State and has the honour to request the extradition of John (Jean) Paul Halleux a.k.a. Jack Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul Halleaux a.k.a. Jean Paul Halleux a.k.a. John Paul Joseph Halleux a.k.a. J. Rivard, a Canadian citizen, born on November 11, 1946.

　　　　　The subject is described as being 175cm in height; weighs 68kgs; blue eyes and gray hair. Photographs and fingerprints of the person sought are appended to the documents submitted in support of the extradition request.

　　　　　Canada is seeking the extradition of John (Jean) Paul Halleux to serve the remainder of a (885 days) sentence for:

- Possession of housebreaking instruments, contrary to section 295(1) of the *Criminal Code of Canada;*

- Break and Enter with intent, contrary to section 306(1)(a) of the *Criminal Code of Canada;*

- Driving while disqualified, contrary to section 238(3)(a) of the *Criminal Code of Canada.* The offences listed above against Mr. Halleux are alleged to have occurred on November 1, 1969 in Tupperville, Ontario and on February 22, 1972 and March 27, 1972 in Fannystelle, Manitoba.

../2

**Canada**

-2-

Warrant of Apprehension and Recommitment to Custody in a Penitentiary was issued on June 19, 2013 by Mike I. Pollmann, Institutional Head, Stony Mountain Institution, Manitoba.

There is no statute of limitations in respect of the offences for which the person sought stands charged.  The offences are punishable by more than one-year imprisonment. John (Jean) Paul Halleux was arrested by US Law Enforcement in Sacramento, California.

The Prosecuting Attorney is Mihiri Perera, Counsel, Department of Justice Canada Correctional Service Canada Legal Services

The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.

WASHINGTON, D.C.

October 19, 2018



EXT - HALLEUX - 00006



Embassy of Canada  Ambassade du Canada

L/LEI

2019 APR -3 ⊕ II: 55

DEPARTMENT OF STATE

Note No. 7013

        The Embassy of Canada presents its compliments to the Department of State and has the honour to refer to Diplomatic Note No. 6381 issued October 19, 2018 (attached) requesting the extradition of John (Jean) Paul Halleux a.k.a. Jack Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul Halleaux a.k.a. Jean Paul Halleux a.k.a. John Paul Joseph Halleux a.k.a. J. Rivard, a Canadian citizen, born on November 11, 1946.

        By copy of this Diplomatic Note, the Embassy of Canada wishes to inform the Department of State that additional documents are being submitted to the United States in supplement to the original request.

        The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurance of its highest consideration.



WASHINGTON, D.C.

March 20, 2019



EXT - HALLEUX - 00007

## TREATIES AND OTHER INTERNATIONAL ACTS SERIES 8237

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and CANADA

Signed at Washington December 3, 1971

*and*

Agreement Amending the Treaty
Effected by Exchange of Notes
Signed at Washington June 28 and July 9, 1974



EXT - HALLEUX - 00008

# CANADA

## Extradition

*Treaty signed at Washington December 3, 1971;*
*And agreement amending the treaty*
*Effected by exchange of notes*
*Signed at Washington June 28 and July 9, 1974;*
*Ratification of the treaty, as amended, advised by the Senate of*
*the United States of America December 1, 1975;*
*Ratified by the President of the United States of America De-*
*cember 12, 1975;*
*Ratified by Canada February 2, 1976;*
*Ratifications exchanged at Ottawa March 22, 1976;*
*Proclaimed by the President of the United States of America*
*May 6, 1976;*
*Entered into force March 22, 1976.*

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

Now, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended,

TIAS 8237

2

to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seventy-six [SEAL]   and of the Independence of the United States of America the two hundredth.

GERALD R. FORD

By the President:
    JOSEPH JOHN SISCO
        *Acting Secretary of State*

EXT - HALLEUX - 00010

3

TREATY ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA
AND CANADA

The United States of America and Canada, desiring to make more effective the cooperation of the two countries in the repression of crime by making provision for the reciprocal extradition of offenders, agree as follows:

EXT - HALLEUX - 00011

4

### ARTICLE 1

Each Contracting Party agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of, any of the offenses covered by Article 2 of this Treaty committed within the territory of the other, or outside thereof under the conditions specified in Article 3(3) of this Treaty.

### ARTICLE 2

(1)  Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2)  Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3)  Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this Article, is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

### ARTICLE 3

(1)  For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including air space

**TIAS 8237**

EXT - HALLEUX - 00012

5

and territorial waters and vessels and aircraft registered in
that Contracting Party or aircraft leased without crew to a lessee
who has his principal place of business, or, if the lessee has
no such place of business, his permanent residence in, that
Contracting Party if any such aircraft is in flight, or if any
such vessel is on the high seas when the offense is committed.
For the purposes of this Treaty an aircraft shall be considered
in flight from the moment when power is applied for the purpose
of the take-off until the moment when the landing run ends.

(2)  In a case when offense 23 of the annexed Schedule is
committed on board an aircraft at any time from the moment when
all its external doors are closed following embarkation until
the moment when any such door is opened for disembarkation, such
offense and any other offense covered by Article 2 committed
against passengers or crew of that aircraft in connection with
such offense shall be considered to have been committed within
the territory of a Contracting Party if the aircraft was
registered in that Contracting Party, if the aircraft landed in
the territory of that Contracting Party with the alleged offender
still on board, or if the aircraft was leased without crew to a
lessee who has his principal place of business, or, if the lessee
has no such place of business, his permanent residence in that
Contracting Party.

(3)  When the offense for which extradition has been requested
has been committed outside the territory of the requesting State,
the executive or other appropriate authority of the requested
State shall have the power to grant the extradition if the laws
of the requested State provide for jurisdiction over such an
offense committed in similar circumstances.

**TIAS 8237**

EXT - HALLEUX - 00013

6

## ARTICLE 4

(1) Extradition shall not be granted in any of the following circumstances:

(i) When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

(ii) When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character. If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2) The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i) A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed on board an aircraft engaged in commercial services carrying passengers.

**TIAS 8237**

EXT - HALLEUX - 00014

7

### ARTICLE 5

If a request for extradition is made under this Treaty for a person who at the time of such request, or at the time of the commission of the offense for which extradition is sought, is under the age of eighteen years and is considered by the requested State to be one of its residents, the requested State, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting State that the request for extradition be withdrawn, specifying the reasons therefor.

### ARTICLE 6

When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

### ARTICLE 7

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

**TIAS 8237**

EXT - HALLEUX - 00015

8

### ARTICLE 8

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law.

### ARTICLE 9

(1)  The request for extradition shall be made through the diplomatic channel.

(2)  The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3)  When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers.

(4)  When the request relates to a person already convicted, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

EXT - HALLEUX - 00016

9

## ARTICLE 10

(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada, or when, in the case of a request emanating from the United States, they are authenticated by an officer of the Department of State of the United States and are certified by the principal diplomatic or consular officer of Canada in the United States.

## ARTICLE 11

(1) In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

TIAS 8237

EXT - HALLEUX - 00017

10

(2)  On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3)  A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents specified in Article 9 shall not have been received.  This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

### ARTICLE 12

(1)  A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i)  He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2)  The foregoing shall not apply to offenses committed after the extradition.

**TIAS 8237**

EXT - HALLEUX - 00018

11

## ARTICLE 13

(1) A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of the requesting States it will extradite the person sought.

(2) Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

## ARTICLE 14

(1) The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2) If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

## ARTICLE 15

(1) To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered to the requesting State if extradition is granted.

**TIAS 8237**

EXT - HALLEUX - 00019

12

(2)  Subject to the qualifications of paragraph (1) of this Article, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.

### ARTICLE 16

(1)  The right to transport through the territory of one of the Contracting Parties a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

(2)  The Party to which the person has been extradited shall reimburse the Party through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

### ARTICLE 17

(1)  Expenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State.  The appropriate legal officers of the State in which the extradition proceedings take place shall, by all legal means within their power, assist the requesting State before the respective judges and magistrates.

EXT - HALLEUX - 00020

13

(2)  No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

ARTICLE 18

(1)  This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2)  This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3)  This Treaty shall enter into force upon the exchange of ratifications.[1] It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.

---

[1] Mar. 22, 1976.

TIAS 8237

EXT - HALLEUX - 00021

14

IN WITNESS WHEREOF the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

DONE in duplicate, in the English and French languages, each language version being equally authentic, at Washington this third day of December, one thousand nine hundred seventy one.

FOR THE UNITED STATES OF AMERICA:

*[signature]* [1]

FOR CANADA:

*[signature]* [2]

-----------

[1] **William P. Rogers**
[2] **Mitchell Sharp**

EXT - HALLEUX - 00022

15

## SCHEDULE

1. Murder; assault with intent to commit murder.
2. Manslaughter.
3. Wounding; maiming; or assault occasioning bodily harm.
4. Unlawful throwing or application of any corrosive substances at or upon the person of another.
5. Rape; indecent assault.
6. Unlawful sexual acts with or upon children under the age specified by the laws of both the requesting and requested States.
7. Willful nonsupport or willful abandonment of a minor when such minor is or is likely to be injured or his life is or is likely to be endangered.
8. Kidnapping; child stealing; abduction; false imprisonment.
9. Robbery; assault with intent to steal.
10. Burglary; housebreaking.
11. Larceny, theft or embezzlement.
12. Obtaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other fraudulent means, whether such deceit or falsehood or any fraudulent means would or would not amount to a false pretense.
13. Bribery, including soliciting, offering and accepting.
14. Extortion.

TIAS 8237

EXT - HALLEUX - 00023

16

15. Receiving any money, valuable securities or other property knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of any company.

17. Offenses against the laws relating to counterfeiting or forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any person travelling upon a railway, or in any aircraft or vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt on board a vessel against the authority of the captain or commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft, by force or violence or threat of force or violence, or by any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in, production, manufacture, or importation of narcotic drugs, Cannabis sativa L., hallucinogenic drugs, amphetamines, barbiturates, cocaine and its derivatives.

TIAS 8237

EXT - HALLEUX - 00024

17

27. Use of the mails or other means of communication in connection with schemes devised or intended to deceive or defraud the public or for the purpose of obtaining money or property by false pretenses.

28. Offenses against federal laws relating to the sale or purchase of securities.

29. Making or having in possession any explosive substance with intent to endanger life, or to cause severe damage to property.

30. Obstructing the course of justice in a judicial proceeding, existing or proposed, by:

    a) dissuading or attempting to dissuade a person by threats, bribes, or other corrupt means from giving evidence;

    b) influencing or attempting to influence by threat, bribes, or other corrupt means a person in his conduct as a juror; or

    c) accepting a bribe or other corrupt consideration to abstain from giving evidence or to do or to refrain from doing anything as a juror.

EXT - HALLEUX - 00025

35

[AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*

Canadian Embassy  Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126

Excellency,

I have the honour to refer to the Treaty on Extradition between the Government of Canada and the Government of the United States signed at Washington on December 3, 1971 and to subsequent discussions between representatives of our two governments concerning the amendment of the said Treaty.

Further to those discussions I now have the honour to propose that the said Treaty be amended as follows:

    (1) That Article 4(2)(i) of the Treaty shall be amended to read: "A kidnapping, murder, or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt or conspiracy to commit, or being a party to

The Honourable
  Henry A. Kissinger,
    Secretary of State,
      Washington, D.C.
        20520

TIAS 8237

36

the commission of, such an offence with
respect to any such person."

(2) That clause 26 of the Schedule annexed to
the Treaty shall be amended to read:
"Offences against the laws relating to
the traffic in, production, manufacture or
importation of drugs listed in Schedule I
to the Single Convention on Narcotic Drugs
of March 30, 1961[1] and of drugs listed in
Schedules I, II and III to the Convention
on Psychotropic Substances of February 21,
1971."

If this proposal meets with the approval of your
government, I have the further honour to propose that
this Note, which is authentic in English and in French,
and your reply shall constitute an amendment to the Treaty
on Extradition between Canada and the United States referred
to above, which shall come into force on the date of the
entry into force of the said Treaty and which shall be con-
sidered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest
consideration.

M. Cadieux,
Ambassador.

---
[1] TIAS 6298; 18 UST 1559.

TIAS 8237

EXT - HALLEUX - 00027

| 101st Congress 2d Session | SENATE | Treaty Doc. 101-17 |
| --- | --- | --- |

# PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

---

## MESSAGE

### FROM

# THE PRESIDENT OF THE UNITED STATES

#### TRANSMITTING

THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988, AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974



APRIL 24, 1990.—Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

WASHINGTON : 1990

39-118

# LETTER OF TRANSMITTAL

THE WHITE HOUSE, *April 24, 1990.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Protocol signed at Ottawa on January 11, 1988, amending the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. I transmit also, for the information of the Senate, the report of the Department of State with respect to the protocol.

The protocol amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. It represents an important step in improving law enforcement cooperation and combatting terrorism by excluding from the scope of the political offense exception serious offenses typically committed by terrorists; e.g., murder, manslaughter, kidnapping, use of an explosive device capable of endangering life or causing grievous bodily harm, and attempt or conspiracy to commit the foregoing offenses.

The protocol also will help to improve implementation of the current extradition treaty in several other respects. Most significant, the protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, *inter alia,* parental child abduction and certain additional narcotics offenses will be covered by the new treaty.

I recommend that the Senate give early and favorable consideration to the protocol and give its advice and consent to ratification.

GEORGE BUSH.

(III)

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 10, 1990.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Protocol amending the 1971 Extradition Treaty Between the United States of America and Canada signed at Ottawa January 11, 1988. I recommend that the Protocol be transmitted to the Senate for advice and consent to ratification.

The Protocol supplements and amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974 (27 U.S.T. 983; TIAS 8237). The Protocol would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents an important step toward improving law enforcement cooperation and countering the threat of international terrorism and other crimes of violence. In addition, the Protocol will help improve the implementation of the current Treaty in several other respects. Most significantly, the Protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, inter alia, parental child abduction and certain additional narcotics offenses will be covered.

Article 2 of the 1971 Extradition Treaty, as amended, which incorporates a Schedule of extraditable offenses, has been replaced in its entirety. Pursuant to the current Extradition Treaty, only crimes that are listed in the Schedule are considered extraditable offenses. As amended by Article I of the Protocol, Article 2 of the 1971 Treaty, as amended, adopts a dual criminality approach, which emphasizes extradition based on underlying criminal conduct rather than for a particular offense. A dual criminality clause permits extradition for any crime that is punishable in both countries by imprisonment or other detention for at least one year. Inclusion of a dual criminality clause, therefore, obviates the need to renegotiate or supplement the Treaty as offenses, such as computer-related crimes or money laundering, become punishable under the laws of both states.

Article I of the Protocol replaces Article 2 of the 1971 Treaty and provides that an offense is extraditable notwithstanding that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States. This provision will allow the United States to request extradition for offenses including interstate and foreign travel or transportation in aid of racketeering enterprises

EXT - HALLEUX - 00030

2

even though the Canadian laws do not include analogous jurisdictional elements for similar underlying criminal behavior. The new provision also stipulates that offenses that relate to taxation or revenue or that are of a "purely fiscal character" will be extraditable offenses.

Article II of the Protocol is a technical amendment, deleting the Schedule of extraditable offenses annexed to the 1971 Treaty, as amended, and incorporated by reference in Article 2.

Article III of the Protocol deletes Article 3 of the 1971 Treaty, in which a particularized definition of "territory," which was necessary at that time to cover certain types of hijacking offenses, is no longer necessary, as both the United States and Canada are parties to the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971, (Hijacking Convention) (22 U.S.T. 1641; TIAS 7192) and the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (Sabotage Convention) (24 U.S.T. 564; TIAS 7570).

Article 3(3) of the 1971 Treaty is amended to give the Executive or other appropriate Authority the discretion to extradite fugitives when the requesting state has jurisdiction over an offense in a situation where the laws of the requested state would not provide for jurisdiction in similar circumstances.

Article IV of the Protocol replaces Article 4 of the 1971 Treaty, and effectively limits the scope of the political offense exception. It specifies certain crimes which shall not be regarded as political offenses, including murder, manslaughter, malicious assault, kidnapping, specified explosives offenses, and conspiracy or attempt to commit any of the foregoing offenses.

In addition, Article IV of the Protocol includes a provision that excludes from the reach of the political offense exception any offense for which both the United States and Canada have an international treaty obligation to extradite the person or submit his case for prosecution; e.g., aircraft hijacking pursuant to the Hijacking Convention; aircraft sabotage pursuant to the Sabotage Convention; crimes against internationally protected persons, including diplomats, under the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973 (28 U.S.T. 1975; TIAS 8532); and hostage taking pursuant to the International Convention against the Taking of Hostages, done at New York on December 17, 1979. This exception will also extend to crimes similarly defined in future multilateral treaties.

Article V of the Protocol replaces Article 7 of the 1971 Extradition Treaty, which allows the Requested State to defer surrender of a fugitive being proceeded against or serving a sentence in its territory until the conclusion of the proceedings and the full execution of any punishment. Under the Protocol, the Requested State has the discretion to choose to extradite to the Requesting State a fugitive who is serving a prison sentence in the Requested State before the expiration of his sentence. This alternative of temporary surrender is routinely included in our modern extradition treaties.

3

Article VI of the Protocol replaces Article 11(3) of the current Treaty to extend the period of provisional arrest in the Requested State from forty-five days to sixty days, which is the time period most commonly provided under U.S. extradition treaties. The extension will allow prosecutors greater latitude in assembling extradition packages and in making necessary adjustments or additions to the documents.

Article VII of the Protocol amends the 1971 Treaty by adding a provision that establishes that, in cases where both states have jurisdiction to prosecute for an offense, the Executive Authority of the Requested State will consult with the Executive Authority of the Requesting State and make a decision whether to extradite the fugitive, or whether to submit the case to its competent authorities for the purpose of prosecution, after considering all relevant factors.

Article VIII of the Protocol provides that its provisions shall apply to any offense committed, any request made or any person found extraditable before or after the entry into force of the Protocol, but shall not apply to an offense committed before the Protocol enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.

Article IX of the Protocol sets forth the procedures for ratification and entry into force.

I enclose, for the information of the Senate, an exchange of letters, dated January 11, 1988, which restates that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters," is an extraditable offense under the 1971 Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Protocol to the Senate at the earliest possible date.

Respectfully submitted,

JAMES W. BAKER III.

Enclosure: As stated.

THE SECRETARY OF STATE,
*Washington, January 11, 1988.*

Hon. JOE CLARK, P.C., M.P.,
*Secretary of State for External Affairs of Canada, Ottawa.*

DEAR MR. MINISTER: I refer to the Protocol Amending the Treaty on Extradition between the United States and Canada we signed today and have the honor to address to you the following.

The United States and Canada recognize that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters", is an extraditable offense under the United States-Canada Extradition Treaty.

Where a person has been charged with or convicted of such an offense in Canada and is found within the jurisdiction of the United States, the United States agrees, upon request, to commence extradition proceedings against such a person pursuant to the Treaty in order that the person may be returned to Canada.

EXT - HALLEUX - 00032

4

The United States will use its best efforts to honor Canadian requests for testimony, information, or other assistance pertaining to such abductions.

Canada and the United States agree to cooperate to deter such transborder abductions. To assist in achieving that purpose, the United States will continue to exert its best efforts to inform those engaged in business as bail bondsmen or bounty hunters and other interested parties of the positions set forth in this exchange of letters.

Canada and the United States agree to consult promptly concerning any case of transborder abduction involving bounty hunters which might arise in the future. The purpose of such consultations shall be to address matters relating to any such case, including any request by the Government of Canada for the return of the person so abducted. In the event of return, the Governments agree to cooperate to have the abducted person escorted to Canada and taken into custody at the border, pursuant to a request for provisional arrest, pending the outcome of extradition proceedings. For the purpose of these consultations, the principal law enforcement contact for the United States will be the Director of the Office of International Affairs of the Criminal Division of the Department of Justice.

I have the honor to propose that this letter and your reply constitute an understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Sincerely yours,

GEORGE P. SHULTZ.

OTTAWA, *January 11, 1988.*

JLA–0026.

Hon. GEORGE P. SHULTZ,
*Secretary of State of the United States of America.*

DEAR MR. SECRETARY: I have the honour to acknowledge receipt of your letter of today's date concerning transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters". I accept your proposal that your letter and this reply constitute an Understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Yours sincerely,

JOE CLARK.

EXT - HALLEUX - 00033

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

### ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

### "ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

### ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

### ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive

authority in the requested State may, in its discretion, grant extradition."

## ARTICLE IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:

"(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

"(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

"(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

"(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

"(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

## ARTICLE V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

## "ARTICLE 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

## ARTICLE VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

## ARTICLE VII

The Extradition Treaty is amended by adding the following after Article 17:

7

## "Article 17 bis

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

## Article VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

## Article IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

George P. Shultz.

For the Government of Canada.

Joe Clark.

O

EXT - HALLEUX - 00036

**FORM:**        **Certificate of Official Records**

<u>CERTIFICATE OF AUTHENTICITY OF OFFICIAL RECORDS</u>

I, the undersigned, _____, attest that my position with the

Government of Canada is _____ and that in that position I am authorized by

the laws of Canada to attest that the documents attached hereto and described below:

(1)   are true copies of official records that are authorized by the laws of Canada to be

recorded or filed in _____, which is a government

office or agency.

(2)   set forth matters that are authorized by the laws of Canada to be reported and

recorded or filed.

Description of Documents:


(SEAL)                                    _____

(Signature)

_____

(Title)

_____

(Place)

_____

(Date)

EXT - HALLEUX - 00037

| 107TH CONGRESS 2d Session | SENATE | TREATY DOC. 107–11 |
| --- | --- | --- |

### SECOND PROTOCOL AMENDING EXTRADITION TREATY WITH CANADA

---

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA, SIGNED AT OTTAWA ON JANUARY 12, 2001



JULY 11, 2002.—The Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

WASHINGTON : 2002

99–118

EXT - HALLEUX - 00038

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *July 11, 2002.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Second Protocol Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada, as amended, signed at Ottawa on January 12, 2001. In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Second Protocol. As the report explains, the Second Protocol will not require implementing legislation.

The Second Protocol amends the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988.

The Second Protocol, upon entry into force, will enhance cooperation between the law enforcement communities of both nations. The Second Protocol incorporates into the U.S.-Canada Extradition Treaty a provision on temporary surrender of persons that is a standard provision in more recent U.S. bilateral extradition treaties. It also provides for new authentication requirements of documentary evidence, which should streamline the processing of extradition requests.

I recommend that the Senate give early and favorable consideration to the Second Protocol and give its advice and consent to ratification.

GEORGE W. BUSH.

EXT - HALLEUX - 00039

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, May 31, 2002.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Second Protocol Amending the Treaty on Extradition Between the Government of the United states of America and the Government of Canada, signed at Ottawa on January 12, 2001 ("Second Protocol"). I recommend that the Second Protocol be transmitted to the Senate for its advice and consent to ratification.

The Second Protocol will strengthen the U.S.-Canada extradition relationship by incorporating a temporary surrender mechanism into the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988 ("Extradition Treaty"). The Second Protocol will also streamline the extradition process by modifying the Extradition Treaty's authentication requirements relating to the admissibility of documentary evidence.

A temporary surrender mechanism has become a standard provision in more recent U.S. bilateral extradition treaties. It allows person who have been found extraditable to be temporarily surrendered to one State to stand trial while they are still serving sentences in the other State. Temporary surrender can be an important tool for use in cases where serious crimes have been committed in one country which might go unpunished if trial in that country were to be delayed for a long period while a sentence was being served for crimes committed in the other country. It enables sequential trials of individuals who have committed extraditable offenses in both countries at a time when witnesses and evidence to both crimes are more readily available.

Article 1 of the Second Protocol amends the Extradition Treaty to provide for a new Article 7bis, which will follow Article 7's existing provisions authorizing the State in receipt of an extradition request ("requested State") to delay surrender until after proceedings against a person in that State have been completed or the person's sentence in that State has been served.

New article 7bis(1) provides that if the requested State has granted an extradition request in accordance with the Treaty with respect to a person who already has been convicted and sentenced in the requested State, it may temporarily surrender the person to the requesting State for prosecution. It further provides that the courts of the requested State must not be divested by virtue of the temporary surrender of jurisdiction over any appeal or habeas cor-

(V)

pus application relating to the conviction or sentence in the requested State.

Article 7bis(2) provides that the person surrendered pursuant to paragraph (1) must be kept in custody in the requesting State. It also provides that the person must be returned to the requested State within forty-five days after the conclusion of the proceedings for which the person's presence was required or at another time as specified by the requested State, in accordance with conditions determined by the Parties. This provision anticipates that authorities in the United States and Canada, which in some cases will include state-level authorities, will consult to determine appropriate conditions for the temporary surrender of an individual, including arrangements for the transfer and return of the prisoner, as well as any extraordinary matters that may be relevant, such as medical care requirements. Consistent with our normal extradition practice, any case-specific agreements or assurances relating to the temporary surrender would be concluded by the federal authorities on behalf of state authorities. Similar to the language in paragraph (1), Article 7bis(2) also provides that the transfer of the person back to the requested State will not divest the courts of the requesting State of jurisdiction over any appeal or habeas corpus application relating to the matter for which the prisoner was temporarily surrendered.

Article 7bis(3) provides that the time spent in custody in the requesting State may be credited to the sentence in the requested State. In the case of the United States, credit for time served by a person surrendered to Canadian authorities may differ among U.S. state and federal authorities.

Article 7bis(4) provides that the requested State can waive the return of the surrendered person in the event the person's sentence in the requested State expires during the temporary surrender period. Article 7bis(4) provides that in such cases the person's surrender shall be considered a "final surrender" under the Extradition Treaty.

Because temporary surrender is contingent on a grant of extradition, Article 7bis(5) provides that the requesting State does not have to make a further request for the extradition of a person who has been returned to the requested State after having been convicted and sentenced in the requesting State for the offense for which temporary surrender was granted.

Article 7bis(6) provides that a person who has been returned to the requested State, after having been convicted and sentenced during a temporary surrender, must be finally surrendered once the custodial portion of the person's sentence in the requested State has been completed or, if the requested State so specifies, at an earlier time. This provision contemplates that the requested State will finally surrender a person who has been released on parole or under other conditions. It also envisions that the requested State may choose to surrender the person at an earlier time.

Article 7bis(7) recognizes that there may be reasons not to proceed with final surrender even though the person was convicted and sentenced during a temporary surrender. Article 7bis(7) (a) provides that final surrender will not take place when the requesting State advises that it is no longer required because the sentence

imposed in the requesting State has expired or for other reasons. Similarly, Article 7bis(7) (b) provides that the person will not be surrendered to the requesting State in the event the competent authority of the requested State revokes its original grant of extradition.

Article 2 of the Second Protocol will establish a new framework for the admissibility of documentary evidence in support of a request for extradition by replacing existing Article 10(2) of the Extradition Treaty.

Consistent with U.S. extradition law on the admissibility of documentation, new Article 10(2)(a) reiterates the existing requirement that, in the case of a request from Canada, documents be authenticated by an officer of the Department of Justice of Canada and certified by the principal diplomatic or consular office of the United States in Canada. Article 10(2)(b), however, changes existing requirements with respect to requests emanating from the United States, so as to take advantage of changes in Canadian law regarding the admissibility of extradition documents in Canadian courts. Specifically, Article 10(2)(b) eliminates the requirement that the United States have its documentary evidence in support of extradition requests to Canada authenticated by an officer of the U.S. Department of State and certified by the principal diplomatic or consular officer of Canada in the United States. Instead, Article 10(2) (b) streamlines the authentication process by allowing documents to be certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. When the person whose extradition is sought has already been convicted, documents supporting the U.S. request are to be certified by a judicial, prosecuting or correctional authority who can attest to the fact that the documents are accurate. These changes should simplify and thereby reduce the administrative burden of processing extradition requests by the United States.

New Article 10(2) (c) provides an alternative to subparagraphs (a) and (b), by providing that documents may also be certified or authenticated in any other manner accepted by the law of the requested State. This addition will enable both countries to take advantage of any changes to their applicable laws.

Article 3 of the Second Protocol addresses the relationship between the Second Protocol and the Extradition Treaty. Paragraph (1) provides that the Second Protocol will form an integral part of the Extradition Treaty. Paragraph (2) provides for retroactivity, noting that, notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, the Second Protocol will apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date. Finally, paragraph (3) provides that the Second Protocol is subject to ratification, and enters into force upon the exchange of instruments of ratification. The Second Protocol would terminate upon termination of the Extradition Treaty.

The Second Protocol does not require implementing legislation. A Technical Analysis explaining in detail the provisions of the Second Protocol is being prepared by the United States negotiating delegation, consisting of the Departments of State and Justice, and will

EXT - HALLEUX - 00042

be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

EXT - HALLEUX - 00043

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION

BETWEEN

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

AND

THE GOVERNEMENT OF CANADA

Signed at Washington on December 3, 1971,
as amended by an Exchange of Notes at Washington on June 28 and July 9, 1974,
and by a Protocol signed at Ottawa on January 11, 1988

THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND
THE GOVERNMENT OF CANADA (hereinafter "the Parties");

RECOGNIZING the close bilateral relationship which exists between them,
reflected in numerous instruments and mechanisms of legal cooperation;

COMMITTED to strengthening legal cooperation in the fight against crime;
and

DESIRING to make more effective the Extradition Treaty between the Parties,
signed at Washington on December 3, 1971 (hereinafter "the Extradition Treaty"), as
amended by an exchange of notes of June 28 and July 9, 1974, and the Protocol to the
Extradition Treaty between the Parties, signed at Ottawa on January 11, 1988
(hereinafter "the Protocol");

HAVE AGREED as follows:

ARTICLE 1

The Extradition Treaty is amended by adding the following after Article 7:

"Article 7 bis

1.      The requested State, after granting an extradition request made in accordance
with the Extradition Treaty, may temporarily surrender a person who has been
convicted and sentenced in the requested State, in order that the person sought may be
prosecuted in the requesting State. The temporary surrender of the person shall not
divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus
application relating to the conviction or sentence that otherwise may be available under
the laws of the requested State.

(1)

2.    A person temporarily surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State. The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose.   The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3.    The period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4.    When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender.  A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5.    Subject to paragraph 7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requesting State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition.

6.    Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the requested State, or at an earlier time specified by the requested State.

7.    Final surrender shall not take place when:

    (a)    the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

    (b)    after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State."

## ARTICLE 2

Article 10(2) of the Extradition Treaty is deleted and replaced by the following text:

"(2)    The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:

    (a)    in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada;

(b)    in the case of a request emanating from the United States for a person who is sought for prosecution, they are certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction.  In the case of a request emanating from the United States for a person who is sought in connection with a conviction, the documents must be certified by a judicial, prosecuting or correctional authority who attests to the fact that the documents are accurate; or

(c)    they are certified or authenticated in any other manner accepted by the law of the requested State. "

### ARTICLE 3

1.     This Second Protocol shall form an integral part of the Extradition Treaty.

2.     Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Second Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offence was committed before or after that date.

3.     This Second Protocol shall be subject to ratification, and shall enter into force upon the exchange of instruments of ratification.  It shall terminate upon termination of the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Second Protocol.

DONE in duplicate at  Ottawa    this  Twelfth  day of  January  2001 in the English and French languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA

FOR THE GOVERNMENT
OF CANADA

EXT - HALLEUX - 00046



Embassy of the United States of America

## Certificate .. .e Attached to Documentary Evidence Accompanying
## .. .uisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, October 19, 2018

I, Michael .. .kin, Chargé d'Affaires of the United States of America at Ottawa, Canada, .. .y certify that the annexed papers, being authenticated supporting doc.. .. proposed to be used upon an application for the extradition from the Unite.. ..es of John Paul HALLEUX a.k.a. Jack Joseph RIVARD a.k.a. Thomas Carl CO.. ..a. Joseph Paul HALLEUX a.k.a. Jean Paul HALLEUX a.k.a. John Paul Joseph HA.. .. a.k.a. J. RIVARD, who is wanted in the Province of Ontario to serve the .. .. er (885 days) of his sentence for Possession of Housebreaking .. .. Break and Enter with intent, and Driving while Disqualified contrary to t.. .inal Code of Canada are properly and legally authenticated so as to enti.. .m to be received in evidence for similar purposes by the tribunals of .. .. as required by Title 18, United States Code, Section 3190.

In wit.. .s .. reof I hereunto sign my name and cause my seal of office to be affixed t.. .. day of October, 2018.

Michael Ba.. kin
Chargé d'Affaires of the
United States of America

EXT - HALLEUX - 00047

**I✚I** Department of Justice    Ministère de la Justice
Canada                          Canada

International Assistance Group                    Telephone: (613) 952-0004
284 Wellington Street - EMB 2072B                Facsimile: (613) 957-8412
Ottawa, Ontario                                  Melanie.Piche@justice.gc.ca
K1A 0H8

October 22, 2018                                          **BY COURIER**

Mr. Andrew Finkelman, Associate Director
U.S. Department of Justice
Office of International Affairs
1301 New York Avenue N.W. - 8th Floor
Washington, DC 20005

Dear Mr. Finkelman:

**RE: John Paul Halleux - Extradition request from Canada**

Please find enclosed a request for the extradition of the above-named individual with
supporting material:

- An original and three (3) copies of the Affidavit of Mihiri Perera, Counsel for the
  Correctional Service Canada.
- An original and three (3) copies of the Affidavit of Lisa Manson, National Manager for
  the Correctional Service Canada.

The Diplomatic Note has been requested and should issue shortly.

Raphael Ali Jean-Pierre is assigned counsel. Please contact him should you have any questions.

I thank you in advance for your attention to this matter.

Melanie Piché, Paralegal
International Assistance Group

Attach.

EXT - HALLEUX - 00048



Department of Justice   Ministère de la Justice
Canada                  Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

*IN THE MATTER OF the extradition of **John Paul Halleux a.k.a.
Jack Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul
Halleaux a.k.a. Jean Paul Halleux a.k.a. John Paul Joseph
Halleux a.k.a. J. Rivard** from the United States of America to
Ontario, Canada*

I, RAPHAEL A. JEAN-PIERRE, Counsel for the International Assistance Group,
Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented
by Canada in support of the extradition of **John Paul Halleux a.k.a. Jack
Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul Halleaux a.k.a.
Jean Paul Halleux a.k.a. John Paul Joseph Halleux a.k.a. J. Rivard** who is
wanted in the Province of Ontario to serve the remainder (885 days) of his
sentence for Possession of Housebreaking Tools, Break and Enter with
intent, and Driving while Disqualified contrary to the *Criminal Code of
Canada.*

THAT the documentation attached to this certificate is composed of:

- the Affidavit of Law of Mihiri Perera, Counsel for the Correctional
  Service of Canada, Legal Services; and

- the Affidavit of Facts of Lisa Manson, National Manager, Sentence
  Management, Correctional Service of Canada.

THAT Erin Kelly whose original signature appears at the end of the Affidavit
and exhibits thereto of MIHIRI PERERA, is a Commissioner of Oaths in and
for the Province of Ontario, having been duly commissioned and duly
authorized by the laws thereof to administer oaths and to take affidavits
within the said Province.



EXT - HALLEUX - 00049

THAT Mihiri Perera whose original signature appears at the end of the Affidavit and exhibits thereto of LISA MANSON, is a Commissioner of Oaths in and for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 17th day of October, 2018.

Raphaël A. Jean-Pierre

EXT - HALLEUX - 00050

| | | |
|---|---|---|
| **Canada** | ) | **HER MAJESTY THE QUEEN** |
| **Province of Ontario** | ) | **v.** |
| | ) | |
| | ) | **JOHN PAUL HALLEUX; aka, JEAN-PAUL HALLEUX** |

In the matter of a request by Canada for the Extradition of Jean-Paul Halleux, aka; John Paul Halleux from the United States of America for the enforcement of a sentence on charges of Possession of Housebreaking Tools, Break and Enter with intent, and Driving while Disqualified contrary to the *Criminal Code*

## AFFIDAVIT OF MIHIRI PERERA

I, **Mihiri Perera**, of the City of Ottawa, in the province of Ontario, **MAKE OATH AND SAY AS FOLLOWS:**

### QUALIFICATIONS

1.  I am a barrister and solicitor licensed to practice law in the Province of Ontario. I received my legal training at the University of Ottawa, Ontario, where I obtained a Juris Doctor (JD) degree in 2013. I was called to the Bar of Ontario in June 2014. Since January 2018, I have been employed with the Federal Department of Justice as a barrister and solicitor, acting as counsel to the Correctional Service of Canada (CSC) as part of its Legal Services Unit.

2.  As counsel with the CSC Legal Services Unit, I provide the CSC with legal assistance in both advisory and litigation matters. In particular, I provide the CSC with legal opinions regarding the *Corrections and Conditional Release Act* and *Regulations,* and the *Criminal Code of Canada* ("*Criminal Code*").

3.  In my role as counsel to CSC, I have reviewed the files maintained by CSC in relation to John Paul Halleux ("Mr. Halleux"). I am therefore familiar with the facts of this case.

### CONVICTIONS IN CANADA AND WARRANTS FOR ARRESTS

4.  Canada is seeking the extradition of Mr. Halleux to serve the remainder of his sentence (885 days) for his convictions on:

    • January 6, 1970 in the Criminal Court of Ontario in Chatham, Ontario

1

- April 10, 1972 in the Provincial Court of Manitoba in Portage La Prairie.

- June 21, 1972 in the Provincial Court of Manitoba in Portage La Prairie.

### *January 6th, 1970 Charges*

5.  On January 6, 1970, Mr. Halleux was convicted of the following offence and received the following sentence:

- Possession of Housebreaking Tools contrary to section 295(1) of the *Criminal Code* (one count).

6.  As a result of the above noted conviction, the Criminal Court of Ontario imposed a sentence of four (4) years of imprisonment in connection with this offence.

### *April 10, 1972 Charges*

7.  While on full parole, on April 10, 1972, Mr. Halleux was convicted of the following offence:

- Break and enter with intent, contrary to section 306(1) (a) of the *Criminal Code*

8.  As a result of this conviction, Mr. Halleux received a sentence of two (2) years imprisonment.

### *June 21, 1972 Charges*

9.  Following his arrest while on full parole, on June 21, 1972, Mr. Halleux was convicted of the following offence:

- Driving While Disqualified contrary to section 238(3)(a) of the *Criminal Code* (one (1) count)

10. Mr. Halleux received a sentence of $253.30 fine, and if in default of payment of the fine by June 9, 1972, a sentence of 30 days of imprisonment concurrent to the sentence imposed on April 10, 1972.

11.  Lisa Manson is the National Manager, Sentence Management for the CSC. As such, she
     is familiar with the details of the sentence imposed on Mr. Halleux, as well as the
     calculation of his sentence and the remainder of the sentence that he must serve should
     he be returned to Canada. The Affidavit of Ms. Manson is included with this request for
     extradition. Attached to her Affidavit is a certified true copy of the Calendar of
     Sentences issued by the Criminal Court of Ontario and the Warrants of Committal
     issued by the Provincial Court of Manitoba on April 10 and June 21, 1972.

12.  The Calendar of Sentences and the Warrants of Committal indicate that Mr. Halleux
     was convicted of the offences set out at paragraph 4 above, as well as the sentences that
     he received for the offences. Also attached to Ms. Manson's Affidavit are: the Warrant
     of Apprehension and Recommitment to Custody in a Penitentiary issued on June 19,
     2013, a certified true copy of the National Parole Board of Canada certificate with
     respect to Mr. Halleux's full parole, a copy of a photograph of Mr. Halleux provided by
     the United States authorities to CSC in 2017 and a copy of Mr. Halleux fingerprints
     obtained from the Royal Canadian Mounted Police.


**SUMMARY OF THE EVIDENCE**

13.  On November 24th, 1971, John Paul Halleux was released on full parole from Millhaven
     Institution, a penitentiary operated by the CSC in Bath, Ontario, Canada. Mr. Halleux'
     release was pursuant to section 16 of the *Parole Act, R.S.C. 1985, c. P-2*, and subject to
     him abiding by certain conditions. Attached as **Exhibit "A"** to my Affidavit is a copy of
     the text of section 16 of the *Parole Act, R.S.C. 1985, c. P-2*.

14.  While on parole, on April 10 and June 21, 1972 respectively, John Paul Halleux was
     charged and convicted of Break and Entry With Intent contrary to section (306)(1)(a) of
     the *Criminal Code* and Driving While Disqualified contrary to section 238(3)(a) of the
     *Criminal Code*. As a result of these convictions, Mr. Halleux was sentenced to two (2)
     additional years of imprisonment. He was returned into custody at Rockwood
     Institution, a minimum security facility in Manitoba.

15.  While serving his sentence, on September 1, 1973, Mr. Halleux escaped from
     Rockwood Institution (closed), presently Stony Mountain Institution.

16.  In September 2017, Mr. Halleux was arrested for perjury and identify theft under an
     alias in Sacramento California. His true identity was confirmed through photo and
     fingerprint analysis and identification. Attached to Ms. Manson's affidavit is a copy of a
     photograph of Mr. Halleux taken by US authorities in 2017 as well as a copy of his

fingerprints obtained from the Royal Canadian Mounted Police which confirms his identity

17. I have carefully reviewed the Affidavit of Lisa Manson and the documents attached to it. I am satisfied that Mr. Halleux was sentenced to a term of imprisonment as a result of his convictions on January 6, 1970, April 10 and June 21, 1972 for the offences set out in paragraph 4 above. I am also satisfied that, as a result of these convictions, Mr. Halleux had a total sentence to serve of 6 years and 1 month, or 2,221 days. Mr. Halleux served 1336 days of imprisonment until his escape from Rockwood Institution on September 1, 1973.

**OFFENCES AND LEGAL PROVISIONS**

18. The *Criminal Code*, Revised Statutes of Canada 1970, Chapter C-34, as amended, is a statute enacted by the Parliament of Canada. It contains the law relating to criminal offences for the whole of Canada. It therefore applies to the province of Ontario and Manitoba. The *Criminal Code* was a duly enacted law of Canada that was in force on January 6th, 1970, April 10th and June 21st, 1972.

19. Under Canadian law, criminal offences are divided into three categories: indictable offences, summary conviction offences, and offences that are, at the election of the Crown, either indictable or summary conviction (known as "hybrid offences"). Generally speaking, indictable offences are more serious offences carrying more severe penalties, and summary conviction offences are less serious offences carrying less severe penalties. The offences of which Mr. Halleux was convicted on January 6, 1970 and April 10, 1972 were indictable offences. The offence of which Mr. Halleux was convicted in June 21, 1972 was a hybrid offence.

20. A copy of the text for section 295(1), 306(1)(a) and 238(3)(a) of the *Criminal Code* under which Mr. Halleux was convicted and sentenced is attached as **Exhibit "B"** to my Affidavit.

21. In 1970, the text of sections 295(1) of the *Criminal Code*, the sections under which Mr. Halleux was convicted and sentenced, read as follows:

> **295. (1)** Every one who without lawful excuse, the proof of which lies upon him, has in his possession any instrument for house-breaking, vault-breaking or safe-breaking is guilty of an indictable offence and is liable to imprisonment for fourteen years.

22. In 1972, the text of sections 306(1)(a) and 238(3)(a) of the *Criminal Code*, the sections under which Mr. Halleux was convicted and sentenced, read as follows:

4

**306. (1)** Every one who

(a) breaks and enters a place with intent to commit an indictable offence therein, is guilty of an indictable offence and is liable ...

(d) to imprisonment for life, if the offence is committed in relation to a swelling-house, or

(e) to imprisonment for fourteen years, if the offence is committed in relation to a place other than a dwelling-house.

**238. (3)** Every one who drives a motor vehicle in Canada while he is disqualified or prohibited from driving a motor vehicle by reason of

(a) the legal suspension or cancellation, in any province, of his permit or license or of his right to secure a permit or license to drive a motor vehicle in that province, is guilty of ...

(c) an indictable offence and is liable to imprisonment of two years or (d) an offence punishable on summary conviction.

23. Once a person such as Mr. Halleux is sentenced to a period of imprisonment in Canada exceeding two years, the administration of their sentence in terms of release from prison and suspension of their conditional release from prison is done in accordance with the *Corrections and Conditional Release Act*, Statutes of Canada 1992, chapter 20, as amended (*CCRA*). The *CCRA* relates to all federal inmates for the whole of Canada. It therefore applies to all federal inmates in the province of Ontario. *The Penitentiary Act*, S.C. 1970, c. P-6 was a duly enacted law of Canada that was in force on January 6th, 1970 and April 10th, 1972 but has now been replaced with the *CCRA*.

24. Under Canadian law, any time spent in custody by an escapee, such as Mr. Halleux, awaiting extradition back to Canada would not be automatically credited towards his remaining Canadian sentence. Therefore, if the United States of America extradites Mr. Halleux back to Canada in accordance with this request he will be required to serve the remaining 885 of his sentence in custody subject to the operation of the *CCRA*.

25. In Canada, there is no statutory limitation period of general application in respect of indictable offences. No particular limitation period applies to the offences and sentences at issue in this case. Rather, under Canadian law, the rule relating to the prosecution of indictable offences is that, in the absence of a specific statutory provision

5

to the contrary, the initiation of a prosecution for an indictable offence is not barred by the passage of any period of time.

26. I have reviewed the Affidavit of Lisa Manson filed in this matter and verily believe that the facts set out therein are true.

SWORN BEFORE ME at                    )
the City of Ottawa, in the Province   )
of Ontario, this 9ᵗʰ day             )
of August, 2018.                      )
                                      )
                                      )
_____              )        _____
Commissioner of Oaths                 )            Mihiri Perera
Erin Kelly

6

EXT - HALLEUX - 00056

| CANADA | ) | IN THE MATTER OF |
| | ) | Extradition for the return |
| PROVINCE OF ONTARIO | ) | of JOHN (JEAN) PAUL |
| | ) | HALLEUX from the |
| EAST REGION | ) | United States of America |
| | ) | to Canada to serve his |
| CITY OF OTTAWA | ) | remaining term of |
| | ) | imprisonment for an |
| | ) | offence contrary to the |
| | ) | *Criminal Code.* |

---

**A F F I D A V I T**

---

EXT - HALLEUX - 00057

This is exhibit A of the affidavit of

Mihiri Perera, sworn before me in

Ottawa, this 9th day of August, 2018.

_____

Commissioner of Oaths

Erin Kelly

*Parole*                                         **Chap. P-2**          7

to the provisions of this Act. 1968-69, c. 38, s. 101.

**Consecutive and concurrent sentences**

**14.** Where, either before, on or after the 26th day of August 1969,

(a) a person is sentenced to two or more terms of imprisonment, or

(b) an inmate who is in confinement is sentenced to an additional term or terms of imprisonment,

he shall, for all purposes of this Act, the *Penitentiary Act* and the *Prisons and Reformatories Act*, be deemed to have been sentenced, on the day on which he is so sentenced in the circumstances described in paragraph (a), or on the day on which he was sentenced to the term of imprisonment he is then serving in the circumstances described in paragraph (b), to a single term of imprisonment commencing on that day and ending on the last day that he would be subject to confinement under the longest of such sentences or under all of such sentences that are to be served one after the other, whichever is the later day. 1968-69, c. 38, s. 101.

**Mandatory supervision**

**15.** (1) Where an inmate to whom parole was not granted is released from imprisonment, prior to the expiration of his sentence according to law, as a result of remission, including earned remission, and the term of such remission exceeds sixty days, he shall, notwithstanding any other Act, be subject to mandatory supervision commencing upon his release and continuing for the duration of such remission.

**Effect of mandatory supervision**

(2) Paragraph 10(1)(e), section 11, section 13 and sections 16 to 21 apply to an inmate who is subject to mandatory supervision as though he were a paroled inmate on parole and as though the terms and conditions of his mandatory supervision were terms and conditions of his parole. 1968-69, c. 38, s. 101.

SUSPENSION AND REVOCATION OF PAROLE

**Suspension of parole**

**16.** (1) A member of the Board or any

modalités de la libération conditionnelle et sous réserve des dispositions de la présente loi. 1968-69, c. 38, art. 101.

**Sentences consécutives ou concurrentes**

**14.** Lorsque, le 26 août 1969 ou avant ou après cette date,

a) un individu est condamné à deux périodes d'emprisonnement ou plus ou que

b) un détenu qui est en détention est condamné à une ou des périodes supplémentaires d'emprisonnement,

il est, à toutes fins de la présente loi, de la *Loi sur les pénitenciers* et de la *Loi sur les prisons et les maisons de correction*, censé avoir été condamné le jour où il a été ainsi condamné dans les circonstances visées à l'alinéa a) ou le jour où il a été condamné à la période d'emprisonnement qu'il est alors en train de purger dans les circonstances visées à l'alinéa b), à une seule période d'emprisonnement commençant ce jour et se terminant le dernier jour où il aurait été assujetti à la détention en vertu de la plus longue de ces condamnations ou en vertu de toutes ces condamnations qui doivent être purgées l'une après l'autre, en prenant de ces deux dates celle qui intervient la dernière. 1968-69, c. 38, art. 101.

**Surveillance obligatoire**

**15.** (1) Lorsqu'un détenu à qui la libération conditionnelle n'a pas été accordée est mis en liberté avant l'expiration de sa sentence en conformité de la loi, à la suite d'une réduction de peine, incluant une réduction méritée et que la période de cette réduction excède soixante jours, il doit, nonobstant toute autre loi, être assujetti à une surveillance obligatoire commençant dès sa mise en liberté et se poursuivant pendant la durée de cette réduction de peine.

**Effet de la surveillance obligatoire**

(2) L'alinéa 10(1)e), l'article 11, l'article 13 et les articles 16 à 21 s'appliquent à un détenu qui est assujetti à la surveillance obligatoire comme s'il était un détenu à liberté conditionnelle en libération conditionnelle et comme si les modalités de sa surveillance obligatoire étaient des modalités de sa libération conditionnelle. 1968-69, c. 38, art. 101.

SUSPENSION ET RÉVOCATION DE LA LIBÉRATION CONDITIONNELLE

**Suspension de la libération conditionnelle**

**16.** (1) Un membre de la Commission ou

5683

8        Chap. P-2              *Libération de détenus*

person designated by the Board may, by a warrant in writing signed by him, suspend any parole, other than a parole that has been discharged, and authorize the apprehension of a paroled inmate whenever he is satisfied that the arrest of the inmate is necessary or desirable in order to prevent a breach of any term or condition of the parole or for the rehabilitation of the inmate or the protection of society.

toute personne qu'elle désigne peuvent, au moyen d'un mandat écrit, signé par eux, suspendre toute libération conditionnelle d'un détenu à liberté conditionnelle autre qu'une libération conditionnelle des obligations de laquelle le détenu a été relevé et autoriser son arrestation, chaque fois qu'ils sont convaincus que l'arrestation du détenu est nécessaire ou souhaitable en vue d'empêcher la violation d'une modalité de la libération conditionnelle ou pour la réhabilitation du détenu ou la protection de la société.

**Apprehension of paroled inmate** (2) A paroled inmate apprehended under a warrant issued under this section shall be brought as soon as conveniently may be before a magistrate, and the magistrate shall remand the inmate in custody until the suspension of his parole is cancelled or his parole is revoked or forfeited.

**Arrestation d'un détenu à liberté conditionnelle** (2) Un détenu à liberté conditionnelle arrêté en vertu d'un mandat émis aux termes du présent article doit être amené, aussitôt que la chose est commodément possible, devant un magistrat. Ce dernier doit renvoyer le détenu sous garde jusqu'à ce que la suspension de sa libération conditionnelle soit annulée ou que sa libération conditionnelle soit révoquée ou frappée de déchéance.

**Review of suspension** (3) The person by whom a warrant is signed pursuant to subsection (1) or any other person designated by the Board for the purpose shall forthwith after a remand by a magistrate of the paroled inmate named therein review the case and, within fourteen days from the time of such remand, either cancel the suspension of his parole or refer the case to the Board.

**Examen de la suspension** (3) La personne par laquelle un mandat est signé en conformité du paragraphe (1) ou toute autre personne désignée par la Commission à cette fin doit, immédiatement après le renvoi sous garde par un magistrat du détenu à liberté conditionnelle y désigné, examiner le cas et dans les quatorze jours à compter de ce renvoi doit, soit annuler la suspension de sa libération conditionnelle soit renvoyer l'affaire à la Commission.

**Idem** (4) The Board shall, upon the referral to it of the case of a paroled inmate whose parole has been suspended, review the case and cause to be conducted all such inquiries in connection therewith as it considers necessary, and forthwith upon completion of such inquiries and its review it shall either cancel the suspension or revoke the parole.

**Idem** (4) La Commission doit, lorsque lui est renvoyé le cas d'un détenu à liberté conditionnelle dont la libération conditionnelle a été suspendue, examiner le cas et faire effectuer toutes les enquêtes y relatives qu'elle estime nécessaires et immédiatement après que ces enquêtes et cet examen sont terminés, elle doit soit annuler la suspension, soit révoquer la libération conditionnelle.

**Effect of suspension** (5) An inmate who is in custody by virtue of this section shall be deemed to be serving his sentence. 1968-69, c. 38, s. 101.

**Effet de la suspension** (5) Un détenu qui est sous garde en vertu du présent article est censé purger sa sentence. 1968-69, c. 38, art. 101.

### FORFEITURE OF PAROLE

**Forfeiture** **17.** (1) Where a person who is, or at any time was, a paroled inmate is convicted of an indictable offence, punishable by imprisonment for a term of two years or more, committed after the grant of parole to him and before his discharge therefrom or the

### DÉCHÉANCE DE LA LIBÉRATION CONDITIONNELLE

**Libération conditionnelle frappée de déchéance** **17.** (1) Lorsqu'un individu qui est ou qui a été à un moment un détenu à liberté conditionnelle est déclaré coupable d'un acte criminel punissable d'un emprisonnement d'au moins deux ans, commis après que la libération conditionnelle lui a été accordée et

EXT - HALLEUX - 00060

This is exhibit B of the affidavit of

Mihiri Perera, sworn before me in

Ottawa, this 9th day of August, 2018.

_____

Commissioner of Oaths

Erin Kelly

Section 292—*continued*

In *ANTONECCHIA v. THE QUEEN*, [1959] Que. Q.B.526, 31 C.R.
320, appellant was found to have organized a band variously estimated
at from 15 to 30 men, to have broken into the home of a girl whose
parents objected to his engagement to her, to have damaged the prem-
ises, stolen articles and terrorized the occupants. His appeal was dis-
missed, the court observing that the trial judge "with good reason" had
not accepted his explanation that he had recruited the band for his pro-
tection while he carried on a discussion with the complainant.

See *R. v. HOGG*, [1958] O.R.723, 122 C.C.C.136, noted under s.301.

**BEING UNLAWFULLY IN DWELLING HOUSE.—Presumption.**

**293. (1) Every one who without lawful excuse, the proof of
which lies upon him, enters or is in a dwelling house with intent to
commit an indictable offence therein is guilty of an indictable of-
fence and is liable to imprisonment for ten years.**

(2) For the purposes of proceedings under this section, evidence
that an accused, without lawful excuse, entered or was in a dwelling
house is, in the absence of any evidence to the contrary, proof that
he entered or was in the dwelling house with intent to commit an
indictable offence therein. 1968-69, c.38, s.92(2).

In *AUSTIN v. THE QUEEN*, [1969] 1 C.C.C.97, 4 C.R.N.S.388
(S.C.C.), it was held (by three Judges to two) that the presumption
subsection cannot be invoked to the detriment of the accused where there
is other evidence relating to the circumstances as the Crown must always
prove each essential element of this offence.

It was held in *R. v. MASSUE*, [1966] 3 C.C.C. 9, 44 C.R. 118, [1964]
Que. Q.B. 721n, that where an accused entered a dwelling-house only to
take photographs but intending to use force to resist attempts to evict
him (which would be illegal under s. 42(2)), he might be convicted
under s. 293.

**"ENTRANCE."**

**294. For the purposes of sections 292 and 293,**

*(a)* **a person enters as soon as any part of his body or any part
of an instrument that he uses is within any thing that is being
entered; and**

*(b)* **a person shall be deemed to have broken and entered if**

(i) **he obtained entrance by a threat or artifice or by collusion
with a person within, or**

(ii) **he entered without lawful justification or excuse, the proof
of which lies upon him, by a permanent or temporary open-
ing.**

**POSSESSION OF HOUSE-BREAKING INSTRUMENTS.—Disguise with intent.**

**295. (1) Every one who without lawful excuse, the proof of
which lies upon him, has in his possession any instrument for house-**

Case 2:20-mj-00039-CKD    Document 1    Filed 02/21/20    Page 66 of 95

EXT - HALLEUX - 00062

breaking, vault-breaking or safe-breaking is guilty of an indictable offence and is liable to imprisonment for fourteen years.

(2) Every one who, with intent to commit an indictable offence, has his face masked or coloured or is otherwise disguised is guilty of an indictable offence and is liable to imprisonment for ten years.

Where the accused appellant charged with separate counts of possession of the same tools for house-breaking and safe-breaking was convicted of the second count only with the same evidence being applied to both charges, such conviction could not stand as the evidence on the second count was not cogent enough to permit displacement of a reasonable doubt that must have been present in the minds of the jury when they acquitted him on the first count: *R. v. INGLEHART*, [1968] 1 C.C.C. 211, 60 W.W.R.339 (B.C.C.A.).

In *TUPPER v. THE QUEEN*, [1968] 1 C.C.C.253, 2 C.R.N.S.35 (S.C.C.), the Court, in dismissing the accused's appeal, rejected the neutral tool theory, offered with the contention that the Crown must also offer some evidence of intention of unlawful use of the instruments, and held that once possession of an instrument capable of being used for house-breaking has been shown, the burden shifts to the accused to show on a balance of probabilities a lawful excuse for possession of the instrument at the time and place in question.

In *ZANINI v. THE QUEEN*, [1968] 2 C.C.C.1, 2 C.R.N.S.219, [1967] S.C.R. 715, the accused and his companions were charged with breaking and entering and committing theft in a dwelling-house and possession of house-breaking instruments. The two companions pleaded guilty to the former charge and the latter charge was withdrawn as against them. The accused was acquitted of the former charge as the stolen money could not be identified by the owner, but by application of s.21 (2) of the Code was convicted of the latter charge. The accused's appeal was dismissed, it being held that the fact that the possession charge was withdrawn against the two active principals did not affect the right of the Crown to proceed against the accused, as there is no requirement in s.21 (2) that the active participants must be convicted of possession; and it was open to the jury to find, as it did, that the accused knew or ought to have known that one of his confederates, for the purpose of effecting their common design of breaking and entering the dwelling-house at least would, of necessity, be in possession of house-breaking instruments.

If the articles are manifestly housebreaking tools, the onus is on the accused to prove an innocent possession. See *R. v. GILSON*, [1965] 4 C.C.C.61, [1965] 2 O.R. 505, 51 D.L.R. (2d) 289.

But if the objects are neutral, such as gloves or a flashlight, the onus is not on the accused to prove lawful possession, unless it is proved that they were, in fact, to be used for housebreaking. See *R. v. ROSS and GILL* (1965), 47 C.R.283, 54 W.W.R.698.

In *R. v. BENISCHEK*, [1963] 3 C.C.C.286, the accused was convicted under s.295 (1) for having in his possession ingredients which, when

the accused's entire course of conduct, and not one isolated item thereof, must be considered; and once it is proved that the accused made threats to cause death or bodily injury with intent to obtain consideration, then they are guilty regardless of whether they honestly believed that they did have or whether they actually had a right to the consideration demanded.

*Breaking and Entering*

**BREAKING AND ENTERING WITH INTENT, COMMITTING OFFENCE OR BREAKING OUT**—Presumptions—Committing offence when armed—"Place".

**306.** (1) Every one who

(*a*) breaks and enters a place with intent to commit an indictable offence therein,

(*b*) breaks and enters a place and commits an indictable offence therein, or

(*c*) breaks out of a place after

(i) committing an indictable offence therein, or

(ii) entering the place with intent to commit an indictable offence therein,

is guilty of an indictable offence and is liable

(*d*) to imprisonment for life, if the offence is committed in relation to a dwelling-house, or

(*e*) to imprisonment for fourteen years, if the offence is committed in relation to a place other than a dwelling-house.

(2) For the purposes of proceedings under this section, evidence that an accused

(*a*) broke and entered a place is, in the absence of any evidence to the contrary, proof that he broke and entered with intent to commit an indictable offence therein; or

(*b*) broke out of a place is, in the absence of any evidence to the contrary, proof that he broke out after

(i) committing an indictable offence therein, or

(ii) entering with intent to commit an indictable offence therein.

(3) [*Repealed. 1972, c. 13, s. 24.*]

(4) For the purposes of this section, "place" means

(*a*) a dwelling-house;

(*b*) a building or structure or any part thereof, other than a dwelling-house;

(*c*) a railway vehicle, vessel, aircraft or trailer; or

(*d*) a pen or enclosure in which fur-bearing animals are kept in captivity for breeding or commercial purposes. 1953-54, c. 51, s. 292; 1968-69, c. 38, s. 92.

Case 2:20-mj-00039-CKD   Document 1   Filed 02/21/20   Page 68 of 95

EXT - HALLEUX - 00064

ORDER PROHIBITING DRIVING—Copy of order for registrar—Driving while disqualified—Exception—Evidence—Notice to accused—Stay of order pending appeal.

238. (1) Where an accused is convicted of an offence under section 203, 204 or 219 committed by means of a motor vehicle or of an offence under section 233, 234, 235, 236 or subsection (3) of this section, the court, judge, justice or magistrate, as the case may be, may, in addition to any other punishment that may be imposed for that offence, make an order prohibiting him from driving a motor vehicle in Canada at all times or at such times and places as may be specified in the order

(a) during any period that the court, judge, justice or magistrate considers proper, if he is liable to imprisonment for life in respect of that offence, or

(b) during any period not exceeding three years, if he is not liable to imprisonment for life in respect of that offence.

(2) Where an order is made pursuant to subsection (1), a copy of the order certified under the hand of the justice or magistrate or under the hand of the judge or the clerk of the court and sealed with the seal, if any, of the court, shall

(a) where the accused holds a permit or licence to drive a motor vehicle, be sent to the registrar of motor vehicles for the province in which the licence or permit was issued, or

(b) where the accused does not hold a permit or licence to drive a motor vehicle, be sent to the registrar of motor vehicles for the province in which the accused resides.

(3) Every one who drives a motor vehicle in Canada while he is disqualified or prohibited from driving a motor vehicle by reason of

(a) the legal suspension or cancellation, in any province, of his permit or licence or of his right to secure a permit or licence to drive a motor vehicle in that province, or

(b) an order made pursuant to subsection (1),

is guilty of

(c) an indictable offence and is liable to imprisonment for two years, or

(d) an offence punishable on summary conviction.

(3.1) Subsection (3) does not apply to a person who drives a motor vehicle in Canada while he is disqualified or prohibited from driving a motor vehicle by reason of the legal suspension or cancellation, in any province, of his permit or licence or of his right to secure a permit or licence to drive a motor vehicle in that province, where that suspension or cancellation is inconsistent with an order made with respect to him under subsection (1).

(4) In proceedings under subsection (3), a certificate setting out with reasonable particularity that a person is disqualified or prohibited from driving a motor vehicle in a province by reason of the suspension or cancellation of his permit or licence or of his right to

Case 2:20-mj-00039-CKD   Document 1   Filed 02/21/20   Page 69 of 95

EXT - HALLEUX - 00065

Section 238—*continued*

secure a permit or licence, purporting to be signed by the registrar
of motor vehicles for that province is evidence of the facts alleged
therein without proof of the signature or official character of the
person by whom it purports to be signed.

(5) Subsection (4) does not apply in any proceedings unless at
least seven days notice in writing is given to the accused that it is
intended to tender the certificate in evidence.

(6) Where an appeal is taken against a conviction for an offence
under section 203, 204 or 219 committed by means of a motor
vehicle or for an offence under section 233, 234, 235, 236 or sub-
section (3) of this section, the court being appealed to may direct
that any order under subsection (1) prohibiting the appellant from
driving a motor vehicle and arising out of the conviction shall be
stayed, pending the final disposition of the appeal or until otherwise
ordered by that court. 1953-54, c. 51, s. 225; 1959, c. 41, s. 16;
1960-61, c. 43, s. 4; 1968-69, c. 38, ss. 17, 92; 1972, c. 13, s. 18(1)
to (3).

*Subsec.* (1). In *R. v. BIGNELL* (1967), 52 Cr.App.R.10 (C.C.A.), it was
held that s.5(2) of the *Road Traffic Act, 1962,* which provided on a con-
viction for dangerous driving that "the court may order him to be dis-
qualified for such period as the court thinks fit", permits a disqualification
order even though it is not attached to a separate sentence of the court.

Two appeal courts within 12 months have taken opposite points of
view of the phrase "during any period". In *R. v. KAZAKOFF,* [1965] 4
C.C.C.378, 52 W.W.R.427 (B.C.C.A.), by a broad and liberal interpre-
tation a prohibition order that permitted driving during certain daylight
hours of the work week was upheld, while in *R. v. ADAMOWICZ,* [1967]
1 C.C.C.59, 49 C.R.194 (Alta. C.A.), the former case was disapproved
on the basis that the Criminal Code by specifying the singular "period"
meant one unbroken period, and a similar intermittent prohibition or-
der was set aside. Also *contra: R. v. LLOYD,* [1969] 4 C.C.C.109
(N.B.C.A.), and *R. v. HERBERT,* [1970] 1 C.C.C.342, [1970] 1 O.R.
782 (Ont. C.A., 2:1).

*Subsec.* (3). Paragraphs (*a*) and (*b*) are two separate offences: *R. v.
JUPP,* [1969] 1 C.C.C.390, [1968] 2 O.R.845 (Mag. Ct.).

Proof of the duration of the suspension, at least to the date of the
offence is necessary: *R. v. SHIELDS* (1968), 1 D.L.R. (3d) 145, 5 C.R.N.S.
1 (Alta. C.A.).

With the establishment of the accused's licence suspension the
Crown is entitled to rely on the presumption that a man intends the
natural consequences of his act in order to prove the necessary *mens rea*
and if, in order to make his suspension order effective, the registrar was
required to give notice of his suspension to the accused there is no obliga-
tion on the Crown to prove that such notice had been served on the

| | | |
|---|---|---|
| CANADA | ) | IN THE MATTER OF a request for the extradition of |
| | ) | JEAN-PAUL HALLEUX; aka JOHN PAUL HALLEUX |
| PROVINCE OF ONTARIO | ) | from the UNITED STATES of AMERICA to CANADA |
| | ) | to serve his remaining term of imprisonment for offences |
| EAST REGION | ) | contrary to the *Criminal Code*. |
| | ) | |
| CITY OF OTTAWA | ) | |

## AFFIDAVIT of LISA MANSON

I, Lisa Manson, of the city of Ottawa, in the Province of Ontario, MAKE OATH AND SAY AS FOLLOWS:

1. I am the National Manager, Sentence Management, for the Correctional Service of Canada (CSC). As such, I am familiar with the computation of sentences in Canada. In my position with CSC, I have access to and have reviewed the contents of and evidence in the CSC's files relating to John Paul Halleux aka Jean-Paul Halleux ("Mr. Halleux") in preparation of this affidavit.

2. The CSC is the federal government agency in Canada responsible for administering sentences of two years or more, as imposed by the courts. In addition, the CSC manages institutions of various security levels and supervises offenders under conditional release or long term supervision in the community.

3. On November 1, 1969, an officer from the Ontario Provincial Police (OPP) noticed the lights of the combination Post Office and General Store in Tupperville, Ontario were not working. The OPP officer observed a vehicle in front of the Post Office and conducted a search of the vehicle. Following the search, the OPP officer was able to determine that the passenger in the vehicle was Mr. Halleux. The OPP officer searched Mr. Halleux and found two screwdrivers, one pair of vice-grips, and a blue wool glove. In the vehicle, the officer found an assortment of tools and noticed that the glass window, the molding of the front door of the Post Office and General Store had been damaged and the marks on the door matched marks on one of the screwdrivers found on Mr. Halleux.

4. On January 6, 1970, before Justice W.B. Beardall of the Criminal Court of Ontario in Chatham, Ontario, Mr. Halleux was convicted of the following offence:

   - Possession of Housebreaking Instruments contrary to section 295(1) of the *Criminal Code* (one count),

5. As a result of the above described events, Mr. Halleux received a sentence of 4 years imprisonment. Mr. Halleux commenced his four-year term of imprisonment at Millhaven Institution, a federal penitentiary located in the province of Ontario.

6. Attached as Exhibit "A" is the certified true copy of the Calendar of Sentences, issued by the Criminal Court of Ontario on January 6, 1970, for the above-described offence.

7. On November 24, 1971, Mr. Halleux was released on full parole from Millhaven Institution to the Winnipeg Parole Office. Attached as Exhibit "B" is a certified true copy of the National Parole Board of Canada certificate with respect to Mr. Halleux's full parole.

8. On March 27, 1972, Winnipeg Royal Canadian Mounted Police (RCMP), Carman Detachment, were called to Steven's Lumber Yard in Fannystelle, Manitoba as the office building had been broken into. Once at the Lumber Yard, police witnessed an individual dive through a window of the office building. This individual was arrested outside the building and identified himself as Jean Paul Halleux.

9. On April 10, 1972, before Justice B.P. McDonald of the Provincial Court of Manitoba in Portage La Prairie, Manitoba, Mr. Halleux was convicted of the following offence:

   • Break and Enter with Intent contrary to section 306(1)(a) of the *Criminal Code*.

10. As a result of the above described events, Mr. Halleux was sentenced to 2 years imprisonment. On April 10, 1972, Mr. Halleux commenced his two-year term of imprisonment at Stony Mountain Institution, a federal penitentiary located in the province of Manitoba.

11. Attached as Exhibit "C" is the certified true copy of the Warrant of Committal, issued by the Provincial Court of Manitoba on April 10, 1972, for the above-described offence.

12. On February 22, 1972, Mr. Halleux did unlawfully drive a motor vehicle while disqualified from driving a motor vehicle by virtue of the legal suspension of his license to operate a motor vehicle within the Province of Manitoba contrary to 238(3)(a) of the *Criminal Code*.

13. Mr. Halleux received a sentence of $253.30 fine, and if in default of payment of the fine by June 9, 1972, a sentence of 30 days of imprisonment concurrent to the sentence imposed on April 10, 1972.

14. On June 21, 1972, at the St. Boniface Magistrate Court in the Province of Manitoba, Mr. Halleux was convicted of the following offence:

   • Driving While Disqualified contrary to section 238(3)(a) of the *Criminal Code*.

15. On June 21, 1972, the in-default warrant was executed and Mr. Halleux received a sentence of 30 days concurrent to the sentence imposed on April 10, 1972.

2

16. Attached as Exhibit "D" is the certified true copy of the Warrant of Committal, issued by the Provincial Court of Manitoba on June 21, 1972 for the above described offences.

17. On September 1, 1973, Mr. Halleux escaped from Stony Mountain Institution, formerly known as Rockwood Institution.

18. On June 19, 2013, a Warrant of Apprehension and Recommitment to Custody in a Penitentiary under section 11.1 of the *Corrections and Conditional Release Act* of Canada was issued that day by Stony Mountain Institution. This warrant remains outstanding. Attached as Exhibit "E" is a certified true copy of this warrant.

19. On September 1, 2017, the CSC was notified that Mr. Halleux was arrested in Sacramento, California under the alias of Thomas Carl Coy. He was charged with felony violations of Penal Code sections 118 (Perjury) and 530.5(a) (Identity Theft). Further investigation revealed Mr. Halleux used additional aliases during the period he was at large. Eventually, Mr. Halleux's identification was confirmed through photo and fingerprint identification.

20. On January 10, 2018, Mr. Halleux was ordered by the court to wear a Global Positioning System monitor in lieu of being remanded into custody in the United States.

21. The period remaining to be served on Mr. Halleux's Canadian sentence is 885 days under the supervision of the CSC.

22. Attached as "Exhibit F" is a certified true copy of Mr. Halleux's fingerprints obtained from the Royal Canadian Mounted Police in Ottawa, Ontario.

23. Attached, as Exhibit "G" is a photograph of Mr. Halleux, dated 1972 taken by the Correctional Service of Canada.

24. Attached as Exhibit "H" is a photograph of Mr. Halleux, dated September 1, 2017, obtained by the Sacramento County Districts Attorney's Office at the time of Mr. Halleux's arrest in the United States.

25. Mr. Halleux has the following identifiers:

- Full name:     Halleux, John (Jean) Paul
- Aliases:        Rivard, Jack Joseph
                  Coy, Thomas Carl
                  Halleaux, Joseph Paul
                  Halleux, Jean Paul
                  Halleux, John Paul
                  Halleux, John Paul Joseph
                  Rivard, J

3

- Date of Birth: ███████
- Citizenship:    Canadian
- Physical Description as of …
    - Height: 175 cm
    - Weight: 68 kg
    - Eyes: blue
    - Hair: gray

26. I certify the facts contained in my affidavit to be accurate to the best of my knowledge and belief.

SWORN before me at the            )
City of Ottawa, in the Province   )
of Ontario, this 5th[th] day      )
of September, 2018                 )
                                   )
                                   )
                                   )

Commissioner of Oaths
Mihiri Perera
LSUC : 66083C

Lisa Manson

4

This is exhibit A of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

_____
Commissioner of Oaths

EXT - HALLEUX - 005

Passed at a Sitting of the County Judge's Criminal Court for the County of Kent held at Chatham, on the

Sixth      day of      January      A. D. 19  70

(His Honour Judge W. B. Beardall)

# CALENDAR OF SENTENCES,

| NAME OF PRISONER | NATURE OF CHARGE | SENTENCE |
|---|---|---|
| John Paul Halleux | Housebreaking instruments Section 295 (1) C. C. | four (4) years in the Penitentiary |

CHATHAM,   January 6th   19  70

COPY

TREAT AS ORIGINAL

C. C. J. C. C. KENT.

RECEIVED
JAN 6 197.
PROVINCIAL JAIL
CHATHAM, ONT.

EXT - HALLEUX - D0072

EXT - HALLEUX - 00073

This is exhibit B of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

Commissioner of Oaths

CPSL 20191A
EXT-HAL RK6556

CONDITIONS DE PAROL
CONDITIONS DE DÉLIBÉRATION CONDITIONNEL

**PAROLE CERTIFICATE**
**CERTIFICAT DE LIBERATION**
**CONDITIONNELLE**

**NATIONAL PAROLE BOARD**
**COMMISSION NATIONALE DES**
**LIBERATIONS**
**CONDITIONNELLES**

Parole Act — Loi sur la libération conditionnelle de détenus

This is to certify the   **John Paul MAILLEUX**
at   **Millhaven**

was granted   una liberación

on

provided   ...

| 18 Nov 71 | J.P. Halleux | Nov. 16, 1971 |
| Dat | Signatura - Parole Libéré | Issued on - Délivré |

---

## INSTRUCTIONS

You must proceed directly to
*Vous devez vous rendre directement à*   **Winnipeg, Manitoba.**

and report to your Parole Supervisor
*et vous rapporter à votre surveillant*   **Mr. Eugene Gubernachuk, Parole Service Officer, N.P.S**

At   **670 St. James Street, Winnipeg 10, Manitoba.   (985-4306)**
*À*

Pursuant to the conditions of your parole you must obey these instructions. Failure to do so may result in suspension and revocation of parole.

*En conformité avec les conditions de votre libération, ces instructions doivent être suivies. Tout manquement peut amener la suspension et la révocation du certificat.*

> **Mr. Dave Rempel,**
> **District Representative,**
> **National Parole Service,**
> **670 St. James Street,**
> **Winnipeg 10, Manitoba**

**COPY**
**TREAT AS ORIGINAL**

Representative — Représentant   Parole Supervisor — Surveillant   **Mr. Eugene Gubernachuk**

---

## ACKNOWLEDGEMENT — RECONNAISSANCE

I understand that the parole certificate is the property of the National Parole Board and must be delivered on demand of the National Parole Board or of my supervisor. I also understand that I am still serving my term of imprisonment and that parole has been granted to allow me to resume my activities as a citizen at large in the community under supervision.

I fully understand and accept all the conditions (including the conditions printed overleaf), regulations and restrictions governing my release on parole. I will abide by and conform to them strictly. I also understand that if I violate them I may be recommitted.

*Je comprends que le certificat de libération conditionnelle appartient à la Commission Nationale des Libérations Conditionnelles et doit être retourné sur demande de la Commission Nationale des Libérations Conditionnelles ou de mon surveillant. Je comprends aussi que je continue de purger ma sentence mais que je suis libéré conditionnellement et sous surveillance afin de me permettre de poursuivre dans la société mes activités de citoyen.*

*Je comprends parfaitement et j'accepte toutes les conditions (y compris les conditions imprimées au verso), les règles et les restrictions auxquelles est assujettie ma libération conditionnelle. Je m'y conformerai complètement. Je comprends également que si je ne les respecte pas, je puis être réincarcéré.*

| Certificate Dated / Date du certificat | Date reçu Released on | Paroled Inmate — Libéré |
|---|---|---|
| November 16, 1971 | 24 Nov 71 | J.P. Halleux |
| | | Witness — Témoin: Clerk Inmate Records   Date 18 Nov 71 |

B 1 (9-70)   For - The Supervisor.

This is exhibit C of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

Commissioner of Oaths



EXT - HA...

**COPY**

# Warrant of Committal Upon Conviction

**TREAT AS ORIGINAL**

**CANADA**
PROVINCE OF MANITOBA
C E N T R A L
JUDICIAL DISTRICT

To the peace officers in the Province of Manitoba, and to the keeper of the
(prison)

at Stony Mountain Institution :

Whereas   **Jean Paul HALLEUX**

*State offence as in the information    hereinafter called the accused, was this day convicted upon a charge that*

on the 27th day of March, A.D. 1972, at the Village of
Fannystelle in the Province of Manitoba, did unlawfully
break and enter a certain place, to wit: Steven's Lumber
Yard Office Building, with intent to commit an indictable
offence therein, contrary to Section 306(1)(a) of the
Criminal Code,

and it was adjudged that the accused for his offence be imprisoned in the
(prison)

at Stony Mountain Institution

for the term of   two years

You are hereby commanded, in Her Majesty's name, to take the accused and convey

him safely to the Stony Mountain Institution
(prison)

at   Stony Mountain, Manitoba,        and deliver him to the keeper thereof.

together with the following precept:

You, the said keeper, are hereby commanded to receive the accused into custody in

the said prison and imprison him there for a term of        two years

and for so doing this is a sufficient warrant.

Dated this      10th        day of   APRIL          A.D. 19 72.

at   Portage la Prairie, Manitoba.

(Seal, if required)

( B.P. McDONALD )
~~Clerk of the Court~~ a Magistrate or ~~a Justice of the Peace~~
in and for the Province of Manitoba.

AG-o-133 (a).
Criminal Code, Form 18 (Sections 482 and 718)

EXT - HALLEUX - 00077

This is exhibit D of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

_____

Commissioner of Oaths

EXT - HALLEUX - 00078

# Warrant of Committal Upon Conviction

CANADA
PROVINCE OF MANITOBA
E A S T E R N
JUDICIAL DISTRICT } ST. BONIFACE MAGISTRATE'S COURT    # 1877

To the peace officers in the Province of Manitoba, and to the keeper of the **Correctional Institution** *(Correctional Institution)*

at  Headingley                                                                    :

Whereas  Jean Paul HALLEUX of 123 Speers Road, ST. BONIFACE, Manitoba,

+State offence as in the Information

hereinafter called the accused, was on ~~this day~~ convicted upon a charge that+ March 3rd., 1972

at the Community of St. Boniface in the Province of Manitoba, on the 22nd day of February 1972 did unlawfully drive a motor vehicle while disqualified from driving a motor vehicle by virtue of the legal suspension of his license to operate a motor vehicle within the Province of Manitoba, contrary to CC 238(3)(a)

and it was adjudged that the accused for his offence forfeit and pay the sum of

$250.00            dollars to be applied according to law and also

to pay to        St. Boniface Magistrate's Court                    the sum of

$3.30            dollars in respect of costs and in default of

++(forthwith or within a time fixed, if any)

payment of the said sums++ on or before June 9th., 1972 or

to be imprisoned in the **Correctional Institution** *(Correctional Institution)* at  Headingley

for the term of 30 days — with a recommendation that this term be served concurrently at Stony Mountain with term presently serving.

unless the said sums costs and charges of the committal and of conveying the accused to the said correctional institution are sooner paid.

You are hereby commanded, in Her Majesty's name, to take the accused and convey him safely to the **Correctional Institution** *(Correctional Institution)* at  Headingley

and deliver him to the keeper thereof, together with the following precept:

You, the said keeper, are hereby commanded to receive the accused into custody in the said correctional institution and imprison him there for a term of 30 days — with a recommendation that this term be serv and for so doing this is a sufficient warrant.        concurrently at Stony Mountain with t presently serving.

Dated this        21st        day of  June                    A.D. 19 72

at  the Community of St. Boniface.

(Seal, if required)

_____
Clerk of the Court, ~~Justice of the Peace or Magistrate~~
in and for the Province of Manitoba.

AG-o-139(b)
Criminal Code, Form 18 (Section 500 and 741)

This is exhibit E of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

Commissioner of Oaths

# MAND IEL/UAL WARR

Page 1

Correctional Service
Canada

PROTECTED B ONCE COMPLETED

CANADA
PROVINCE/TERRITORY OF **MANITOBA**

| | |
|---|---|
| **F.P.S.** | **101971A** |
| **D.O.B.** | ████████ |
| **W.E.D.** | **1976/05/21** |

IN THE MATTER OF THE CORRECTIONS AND CONDITIONAL RELEASE ACT
CHAPTER 20 OF THE STATUTES OF CANADA (1992)

WARRANT OF APPREHENSION AND RECOMMITMENT TO
CUSTODY IN A PENITENTIARY (section 11.1)

TO ANY PEACE OFFICER IN CANADA

WHEREAS, HALLEUX, JEAN PAUL                    , of **STONY MOUNTAIN**
hereinafter referred to as the offender, is a person sentenced, committed or transferred to a penitentiary and is at large
without lawful authority before the expiration of the sentence imposed upon her/him by a court of law.

AND WHEREAS, I    POLLMANN, MIKE I                    , an institutional head
have reasonable and probable grounds, as follows, to believe that the offender should be apprehended and
recommitted pursuant to the provisions of section 11.1 of the Corrections and Conditional Release Act.

THIS IS THEREFORE to command you to apprehend the offender, convey him/her safely to a penitentiary and deliver
him/her to the keeper thereof, together with the following precept:

YOU THE SAID keeper are hereby commanded to receive the offender into custody in the said penitentiary to undergo
a term of imprisonment pursuant to the provisions of the Corrections and Conditional Release Act.

DATED this **19th** day of **June**    , **2013** ,
at the City/Town/Municipality of **WINNIPEG**
in the Province/Territory of **MANITOBA**.

POLLMANN, MIKE I
Institutional Head

EXECUTED on the _____ day of _____ , _____ ,
at the City/Town/Municipality of _____
in the Province/Territory of _____
by _____

PEACE OFFICER                    RANK
WARRANT NO.    U50A00001013

COPY

TREAT AS ORIGINAL

EXT - HALLEUX - 00081

This is exhibit F of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

Commissioner of Oaths

RIGHT / DROIT
RIGHT
LEFT / GAUCHE
(IF ANY FINGERPRINT IS NOT RÉCOR
Left Thumb
DATE
Right Thumb
*NAME
-64 St. B

| | | | |
|---|---|---|---|
| Contributing Agency<br>Organisme contributeur | Contributor's No./Reference No.<br>N° du contributeur/N° de référence<br>Ind Ref # Réf. Ind:<br>CBSA/CIC-ASFC/CIC :<br>FOSS-SSOBL: | Signature of official taking fingerprints<br>Signature du préposé aux empreintes | Date fingerprinted<br>Date de prélèvement des empreintes<br>Y-A M D-J |
| | Signature of person fingerprinted (full name and address) - Signature de la personne dactyloscopiée (nom au complet et adresse) | | DOB - DDN Y-A M D-J<br>[redacted] |

| Surname - Nom de famille | Given Name 1 - Prénom 1 | Given Name 2 - Prénom 2 | Other Given Names - Autres prénoms |
|---|---|---|---|
| HALLEUX, | JOHN | PAUL | |
| Other names, aliases, nicknames, maiden name, Autres noms, nom d'emprunt, sobriquets, nom de jeune fille | Given Name 1 - Prénom 1 | Given Name 2 - Prénom 2 | Other Given Names - Autres prénoms |

| Apartment / Unit # / Street Address-Adresse (rue, n° d'app. ou d'unité) | City - Ville | Prov. | Postal-Code-Postal |
|---|---|---|---|
| | | | |

| Sex - Sexe | Hair - Cheveux | Eyes - Yeux | Height - Taille (cm) | Weight - Poids (kg) | FPS NO. - N° FPS |
|---|---|---|---|---|---|
| ☒ M ☐ F | | Blue | 175 | 68 | 101971A-4 |
| Race<br>☐ White Blanche ☐ Non white (specify) Autre (préciser) | | | Complexion - Teint | | |

I, A/Sgt. Guy Durocher, am the official of the Royal Canadian Mounted Police charged with the responsibility for issuing copies of Criminal Records maintained in the Central Repository of Criminal History Information, Ottawa, Ontario.

I hereby certify that this is a true copy of the fingerprints of FPS # 101971A, held on file in the Central Repository of Criminal History Information, Ottawa, Ontario, in the name of John Paul HALLEUX

Also known as John HALLEUX, Jean Paul HALLEUX

A/Sgt. Guy Durocher
A/NCO i/c Records Analysis Services
RCMP Forensic Science & Identification Services Directorate

Ottawa, Ontario
2017-12-11

RCMP GRC C480-1 (2007-03)

EXT - RADLEUX- 00083

This is exhibit G of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

Commissioner of Oaths

| | ASB DECISION | |
|---|---|---|
| DATE | DECISION | |

EXT - HALLEUX - 00085

J ............ F ...........

R ............ P ...........

Others ...................

D ....... E ....... W .......

DA .......... GR .........

Exp ...................

Accom. ..................

| DATE | PLACE OF WORK | DATE | PLACE OF WORK | DATE | PLACE OF WORK |
|---|---|---|---|---|---|
| 12 Apr 72 | Recid | | | | |
| 8 May 72 | Wings | | | 73 | |
| 15 May 72 | Julius | | | | |
| 14 Aug 72 | Scotts | | | | |
| 19 Sept 72 | Trans Prov. Comm. | | | | |
| | Tractor | | | | |

19 MANITOBA 72

1 8 7 7

HALLEUX, Jean Raw

EXT - HALLEUX - 00086

This is exhibit H of the affidavit of

Lisa Manson, sworn before me in

Ottawa, this 5th day of September, 2018.

Commissioner of Oaths

EXT - HALLEUX - 00087

XREF: 636014

Photo Date: 9 1 2017

Arrest Number: 10035779



EXT - HALLEUX - 00088



Embassy of the United States of America

### Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

### AMERICAN FOREIGN SERVICE

Ottawa, Canada, March 19, 2019

I, Kelly Craft, Ambassador of the United States of America at Ottawa, Canada, hereby certify that the annexed papers, is authenticated documentation presented by Canada in support of the extradition of John Paul Halleux a.k.a. Jack Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul Halleaux a.k.a. Jean Paul Halleux a.k.a. John Paul Joseph Halleux a.k.a. J. Rivard who is wanted in the Province of Ontario to serve the remainder (885 days) of his sentence for Possession of Housebreaking Tools, Break and Enter with intent, and Driving while Disqualified contrary to the Criminal Code are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed this 19th day of March, 2019.

_Kelly Craft_

Kelly Craft
Ambassador of the
United States of America

EXT - HALLEUX - 00089



Department of Justice    Ministère de la Justice
Canada                   Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

*IN THE MATTER OF the extradition of **John Paul Halleux a.k.a. Jack Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul Halleaux a.k.a. Jean Paul Halleux a.k.a. John Paul Joseph Halleux a.k.a. J. Rivard** from the United States of America to Ontario, Canada*

I, RAPHAEL A. JEAN-PIERRE, Counsel for the International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the extradition of ***John Paul Halleux a.k.a. Jack Joseph Rivard a.k.a. Thomas Carl Coy a.k.a. Joseph Paul Halleaux a.k.a. Jean Paul Halleux a.k.a. John Paul Joseph Halleux a.k.a. J. Rivard*** who is wanted in the Province of Ontario to serve the remainder (885 days) of his sentence for Possession of Housebreaking Tools, Break and Enter with intent, and Driving while Disqualified contrary to the *Criminal Code of Canada*.

THAT the supplemental documentation attached to this certificate is composed of:

-       the Supplemental Affidavit of Facts of Lisa Manson dated March 14, 2019, National Manager, Sentence Management, Correctional Service of Canada.

THAT Angela Joan Van Allen whose original signature appears at the end of the Affidavit of LISA MANSON, is a Commissioner of Oaths in and for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 15th day of March, 2019.

_____

Raphaël A. Jean-Pierre

Canada

EXT - HALLEUX - 00090

| | | |
|---|---|---|
| CANADA | ) | IN THE MATTER OF a request for the extradition of |
| | ) | JEAN-PAUL HALLEUX; aka JOHN PAUL HALLEUX |
| PROVINCE OF ONTARIO | ) | from the UNITED STATES of AMERICA to CANADA |
| | ) | to serve his remaining term of imprisonment for offences |
| EAST REGION | ) | contrary to the *Criminal Code*. |
| | ) | |
| CITY OF KINGSTON | ) | |

## AFFIDAVIT OF LISA MANSON

I, Lisa Manson, of the city of Kingston, in the Province of Ontario, MAKE OATH AND SAY AS FOLLOWS:

1. I am the National Manager, Sentence Management, for the Correctional Service of Canada (CSC). As such, I am familiar with the computation of sentences in Canada. In my position with CSC, I have access to and have reviewed the contents of and evidence in the CSC's files relating to John Paul Halleux aka Jean-Paul Halleux ("Mr. Halleux") in preparation of this affidavit.

2. This Affidavit should be read in conjunction with: my first Affidavit, sworn on September 5, 2018 and the Affidavit of Law sworn by Mihiri Perera on August 9, 2018.

3. Mr. Halleux was sentenced on January 6, 1970 before Justice W.B. Beardall in the Criminal Court of Ontario, for the offence of Possession of Housebreaking Instruments, contrary to section 295(1) of the Criminal Code of Canada. He received a federal sentence of four years imprisonment. He began his term of imprisonment at Millhaven Institution in Ontario, Canada.

4. Following Mr. Halleux' arrest while he was on full parole, he was convicted of Break and Enter with Intent, contrary to section 306(1)(a) of the Criminal Code of Canada on April 10, 1972 in the Provincial Court of Manitoba in Portage La Prairie and received a sentence of two years imprisonment.

5. On June 21, 1972, Mr. Halleux was convicted of Driving While Disqualified contrary to section 238(3)(a) of the Criminal Code of Canada in the Provincial Court of Manitoba in Portage La Prairie and received a sentence of $253.30 in default, 30 days concurrent to the sentence imposed on April 10, 1972.

6. At the time of the above noted sentencings, Canadian law required the attendance of the accused during presentation of evidence and sentence proceedings. There is no evidence on Mr. Halleux's file to suggest he was not present before Justice Beardall for the trial proceedings.

1

EXT - HALLEUX - 0009

7.  I certify the facts contained in my affidavit to be accurate to the best of my knowledge and belief.

SWORN before me at the )
City of Kingston, in the Province )
of Ontario, this *14* day )
of *march*, 2019 )
)
)
*Angela Joan Van Allen* )
Commissioner of Oaths

_____
Lisa Manson

Angela Joan Van Allen,
Commissioner, etc., Province of
Ontario. for the Government of Canada,
Correctional Service of Canada.
Expires August 9, 2019.

2