1  MCGREGOR W. SCOTT
United States Attorney
2  QUINN HOCHHALTER
Assistant United States Attorney
3  501 I Street, Suite 10-100
Sacramento, CA 95814
4  Telephone: (916) 554-2700
Facsimile: (916) 554-2900
5
Attorneys for Plaintiff
6  United States of America

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11  In the Matter of the Extradition of          CASE NO.  2:20-MJ-039 CKD

12  JOHN (JEAN) PAUL HALLEUX                      MEMORANDUM OF EXTRADITION LAW
    A/K/A  JACK JOSEPH RIVARD                     AND REQUEST FOR DETENTION
13  A/K/A  THOMAS CARL COY                        PENDING EXTRADITION PROCEEDINGS
    A/K/A  JOSEPH PAUL HALLEAUX
14  A/K/A  JEAN PAUL HALLEUX
    A/K/A  JOHN PAUL JOSEPH HALLEUX
15  A/K/A  J. RIVARD

16

17         The United States, in fulfilling its treaty obligations to Canada respectfully requests that the

18  fugitive in this case, John Paul Halleux ("Halleux"), be held without bond pending the hearing on the

19  certification of his extraditability pursuant to 18 U.S.C. §§ 3181 *et seq.*, or until he is surrendered to

20  Canadian authorities if Halleux waives extradition.  This memorandum summarizes the framework of

21  extradition law in the United States and sets forth the reasons why Halleux should be detained.  In short,

22  Halleux should be detained because he cannot overcome the strong presumption against bail in

23  international extradition cases.  Specifically, he cannot meet his burden of showing that he does not pose

24  a risk of flight, is not a danger to the community, and that special circumstances exist warranting his

25  release.

26                              **BACKGROUND**

27         Canada seeks the extradition of Halleux so that he may serve the remaining 885 days of his

28  sentence following his escape from custody on convictions of Possession of Housebreaking Instruments,

MEMORANDUM OF EXTRADITION LAW AND REQUEST          1
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1    contrary to the Criminal Code of Canada (the "CCC") § 295(1), and Break and Enter with Intent,

2    contrary to CCC § 306(1)(a).  A warrant for Halleux's Apprehension and Recommitment to Custody in

3    a Penitentiary pursuant to Section 11.1 of the Corrections and Conditional Release Act of Canada was

4    issued on June 19, 2013; the warrant remains outstanding.  The underlying facts and procedural history

5    of Halleux's convictions are as follows:

6        On November 1, 1969, Ontario Provincial Police ("OPP") discovered that the front door and

7    glass window to the Post Office and General Store in Tupperville, Ontario, had been damaged.  While

8    investigating, an OPP officer encountered Halleux present in a vehicle in front of the Post Office and

9    General Store.  The OPP officer searched Halleux and recovered two screw drivers, one pair of vice

10   grips, and a blue wool glove.  It was determined that damage marks to the molding of the front door of

11   the building matched the tools recovered from Halleux.

12       In connection with these events, Halleux was convicted on January 6, 1970, of Possession of

13   Housebreaking Instruments, in violation of section 295(1) of the CCC before the Criminal Court of

14   Ontario in Chatham, Ontario.  The Court imposed a sentence of four years' imprisonment in connection

15   with this offense.  He was subsequently paroled on November 24, 1971.

16       While still on parole, Halleux was arrested on March 27, 1972, in Fannystelle, Manitoba, in

17   connection with a break-in.  Royal Canadian Mounted Police ("RCMP") officers were called to the

18   Steven's Lumber Yard in Fennystelle in response to a call that the building had been broken into.  Upon

19   arriving at the scene, RCMP officers witnessed an individual dive through a window of the office

20   building.  This individual was later arrested outside the building and identified himself as Halleux. On

21   April 10, 1972, Halleux was convicted of Break and Enter with Intent, contrary to section 306(1)(a) of

22   the CCC, by the Provincial Court of Manitoba.  He was sentenced to two years' imprisonment at the

23   Stony Mountain Institution, a federal penitentiary located in Manitoba.

24       On September 1, 1973, Halleux escaped from the Stony Mountain Institution.  The remaining

25   period to be served on Halleux's sentence is 885 days' imprisonment.

26       Canada subsequently requested the extradition of Halleux pursuant to its extradition treaty with

27   the United States ("the Treaty").  The United States, in accordance with its obligations under the Treaty

28

MEMORANDUM OF EXTRADITION LAW AND REQUEST
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1   and pursuant to 18 U.S.C. §§ 3181 et seq., filed a complaint in this District seeking a warrant for

2   Halleux's arrest.  ECF No. 1.

3                                              **ARGUMENT**

4   **I.      LEGAL FRAMEWORK OF EXTRADITION PROCEEDINGS**

5          **A.      The limited role of the Court in extradition proceedings**

6          The extradition process is *sui generis*.  Extradition is primarily an executive function with a

7   specially defined role for the Court, which is authorized by statute to hold a hearing at which it

8   determines whether to certify to the Secretary of State that the evidence provided by the requesting

9   country is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see*, *e.g.*, *United States v. Knotek*, 925

10  F.3d 1118, 1124 (9th Cir. 2019) ("As we have stated on many occasions, '[e]xtradition is a matter of

11  foreign policy,' a diplomatic process over which the judiciary provides 'limited' review.") (citation

12  omitted).  The Secretary of State, and not the Court, then decides whether the fugitive should be

13  surrendered to the requesting country.  18 U.S.C. §§ 3184, 3186; *Santos v. Thomas*, 830 F.3d 987, 993

14  (9th Cir. 2016) (internal citations omitted).  "This bifurcated procedure reflects the fact that extradition

15  proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the

16  standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate

17  questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-

18  Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

19         If Mr. Halleux waives extradition, no hearing will be necessary.  If Mr. Halleux does not waive

20  extradition, an extradition hearing will be necessary.  At an extradition hearing, the Court's role is

21  limited to considering the requesting country's evidence and determining whether the legal requirements

22  for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case

23  law—have been established.  *See Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing

24  *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)) (analogizing extradition hearings to preliminary hearings

25  in a criminal case).  If the Court finds that the requirements for certification have been met, it must

26  provide the certification to the Secretary of State, together with a copy of any testimony taken before the

27  Court, and must commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final

28  determination regarding surrender.  18 U.S.C. § 3184 (following certification, the extradition judge

MEMORANDUM OF EXTRADITION LAW AND REQUEST                    3
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1    "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain

2    until such surrender shall be made"); *see also Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006);

3    *Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000).

4             **B.       The requirements for certification**

5             If Mr. Halleux waives extradition, the Court will not need to certify his extraditability to the

6    Secretary of State.  If Mr. Halleux does not waive, however, the Court will determine whether the legal

7    requirements for certification of extraditability have been satisfied.  The Court should certify to the

8    Secretary of State that a fugitive is extraditable when the following requirements have been met: (1) the

9    judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over

10   the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which

11   surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding

12   of probable cause as to each charge.  *See*, *e.g.*, *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008)

13   (internal citations omitted).  The following sections briefly discuss each of those requirements.

14                      1.       Authority over the proceedings

15            The extradition statute authorizes proceedings to be conducted by "any justice or judge of the

16   United States, or any magistrate judge authorized so to do by a court of the United States, or any judge

17   of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  As such, the judicial officer

18   conducting the extradition hearing prescribed by § 3184 does not exercise "any part of the judicial

19   power of the United States," *In re Extradition of Kirby*, 106 F.3d 855, 866 (9th Cir. 1996), but rather is

20   acting in a "non-institutional capacity by virtue of a special authority," *In re Extradition of Howard*, 996

21   F.2d 1320, 1325 (1st Cir. 1993).  Both magistrate judges and district judges may render a certification

22   under § 3184.  *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993); Local Rule 302(b)(8)

23   (authorizing magistrate judges to conduct extradition proceedings in accordance with 18 U.S.C. § 3181

24   *et seq.*).

25   ///

26   ///

27   ///

28   ///

MEMORANDUM OF EXTRADITION LAW AND REQUEST
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1        2.        Jurisdiction over the fugitive

2    The Court has jurisdiction over a fugitive, such as Halleux, who is found within its jurisdictional

3 boundaries.  18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person

4 found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged.").

5        3.        Treaty in full force and effect

6    Section 3184 provides for extradition in specifically defined situations, including whenever a

7 treaty or convention for extradition is in force between the United States and the requesting state.  *See*

8 *id.*; *see also Then v. Melendez*, 92 F.3d 851, 853 (9th Cir. 1996) (noting that "the executive branch does

9 not have the power to extradite alleged criminals absent a valid extradition treaty.").  The government

10 will satisfy this requirement at the extradition hearing by offering into evidence a declaration from an

11 attorney in the Office of the Legal Adviser for the U.S. Department of State, attesting that there is a

12 treaty in full force and effect between the United States and Canada.  The Court must defer to the

13 Department of State's determination in that regard.  *See Then*, 92 F.3d at 854.

14        4.        Crimes covered by the treaty

15    Extradition treaties create an obligation for the United States to surrender fugitives under the

16 circumstances defined in the Treaty.  Article 1 of the applicable treaty in this case provides for the return

17 of fugitives who are sought for trial or punishment for "extraditable offenses" as that term is defined

18 under the Treaty.  "The question of whether an offense is extraditable involves determining: (1) whether

19 it is listed as an extraditable crime in the relevant treaty; (2) whether the alleged conduct is criminalized

20 in both countries; and, (3) whether the offenses in both countries are substantially analogous." *Knotek*,

21 925 F.3d at 1128-29.

22    Article 2 of the Treaty defines offenses as extraditable if the conduct on which the offense is

23 based is punishable under the laws of both the United States and Canada by deprivation of liberty for a

24 period exceeding one year or greater punishment.  In assessing whether the crimes for which extradition

25 is requested are covered by the Treaty, the Court should examine the description of criminal conduct

26 provided by Canada in support of its charges and decide whether that conduct would be criminal under

27 U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the

28 states.  *See, e.g., id.* at 1129 n.10.  A requesting country need not establish that its crimes are identical to

1  ours.  *Id*. at 1131; *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) ("The primary focus of dual

2  criminality has always been on the conduct charged; the elements of the analogous offenses need not be

3  identical.").  Rather, "the court looks at whether 'the essential character of the transaction is the same,

4  and made criminal by both statutes.'"  *Knotek*, 925 F.3d at 1131 (quoting *Wright v. Henkel*, 190 U.S. 40,

5  62 (1903); brackets omitted).  Indeed, "[t]he law does not require that the name by which the crime is

6  described in the two countries shall be the same; nor that the scope of the liability shall be coextensive,

7  or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal

8  in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922).

9       In fulfilling its function under Section 3184, the Court should liberally construe the Treaty in

10  order to effectuate its purpose, namely the surrender of fugitives to the requesting country.  *Factor v.*

11  *Laubenheimer*, 290 U.S. 276, 298-300 (1933); *see also, e.g., Martinez v. United States*, 828 F.3d 451,

12  463 (6th Cir. 2016) (en banc) ("default rule" is that any ambiguity in extradition treaty must be

13  construed in favor of "facilitat[ing] extradition"); *In Re Extradition of Mathison*, 974 F. Supp. 2d 1296,

14  1305 (D. Or. 2013).  Accordingly, because extradition treaties should be "interpreted with a view to

15  fulfil our just obligations to other powers," *Grin v. Shine*, 187 U.S. 181, 184 (1902), the Court should

16  "approach challenges to extradition with a view towards finding the offenses within the treaty," *McElvy*

17  *v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

                   5.    Probable cause that the fugitive has committed the offenses

19       To certify the evidence to the Secretary of State, the Court must conclude there is probable cause

20  to believe that the crimes charged by Canada were committed by the person before the Court.  *See Vo*,

21  447 F.3d at 1237.  The evidence is sufficient, and probable cause is established, if it would cause a

22  "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein*

23  *v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted).  The extradition

24  judge's probable cause determination is "not a finding of fact 'in the sense that the court has weighed the

25  evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of

26  indicating those items of submitted evidence on which the decision to certify extradition is based.'"

27  *Quinn*, 783 F.2d at 791 (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981)); *see also In*

28  *re Extradition of Strunk*, 293 F. Supp. 2d 1117, 1121 (E.D. Cal. 2003).

1        **C.        An extradition hearing follows unique procedures**

2        As detailed above, the purpose of an extradition hearing is to decide the sufficiency of each

3    charge for which extradition is requested under the applicable extradition treaty; it is not to determine

4    the guilt or innocence of the fugitive—that determination is reserved for the foreign court.  *Collins*, 259

5    U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901).  Accordingly, an extradition hearing is not a

6    criminal proceeding, *see*, *e.g.*, *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984); *Martin v.*

7    *Warden, Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993), and it is governed by "the general

8    extradition law of the United States and the provisions of the Treaty," *Emami v. U.S. Dist. Ct.*, 834 F.2d

9    1444, 1450-51 (9th Cir. 1987).

10        The Federal Rules of Evidence do not apply to extradition proceedings. Fed. R. Evid. 1101(d)(3)

11    ("These rules—except for those on privilege—do not apply to . . . miscellaneous proceedings such as

12    extradition or rendition."); *Then*, 92 F.3d at 855.  Indeed, hearsay evidence is admissible at an

13    extradition hearing, and, moreover, a certification of extraditability is properly based entirely on the

14    authenticated documentary evidence and information provided by the requesting government.  *See*, *e.g.*,

15    *Collins*, 259 U.S. at 317; *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986).  Nothing more is

16    required, and typically nothing more is provided.  *See*, *e.g.*, *Zanazanian v. United States*, 729 F.2d 624,

17    627-28 (9th Cir. 1984) (police report describing witness statements is competent evidence); *In re*

18    *Extradition of Mainero*, 990 F. Supp. 1208, 1212-13 & 1226-29 (S.D. Cal. 1997) (statements of co-

19    conspirators and other witnesses sufficient in extradition to Mexico).  Extradition treaties do not require,

20    or even anticipate, the testimony of live witnesses at the hearing.  Indeed, requiring the "demanding

21    government to send its citizens to another country to institute legal proceedings, would defeat the whole

22    object of the treaty."  *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *see also*, *e.g.*, *Zanazanian*, 729

23    F.2d at 626-27.

24        The Federal Rules of Criminal Procedure also do not apply to extradition proceedings. Fed. R.

25    Crim. P. 1(a)(5)(A) ("Proceedings not governed by these rules include . . . the extradition and rendition

26    of a fugitive"); *Mathison*, 974 F. Supp. 2d at 1304.  A fugitive has no right to discovery.  *See*, *e.g.*,

27    *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005).  Furthermore, many constitutional protections

28    applicable in criminal cases do not apply.  For example, a fugitive has no right to cross-examine

MEMORANDUM OF EXTRADITION LAW AND REQUEST
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1  witnesses who might testify at the hearing, *see*, *e.g.*, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406-07

2  (9th Cir. 1988); there is no Sixth Amendment right to a speedy trial, *see*, *e.g.*, *In re Extradition of*

3  *Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986); the Fifth Amendment guarantee against double

4  jeopardy does not apply to successive extradition proceedings, *see*, *e.g.*, *In re Extradition of Powell*, 4 F.

5  Supp. 2d 945, 951 (S.D. Cal. 1998) (citing *Collins*, 262 U.S. at 429); the exclusionary rule is not

6  applicable, *see*, *e.g.*, *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and a fugitive does not

7  have the right to confront his accusers, *see*, *e.g.*, *Bingham*, 241 U.S. at 517.

8       Relatedly, a fugitive's right to present evidence is severely constrained. A fugitive may not

9  introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but

10  rather may only introduce evidence explaining the submitted evidence.  See *Charlton*, 229 U.S. at 461-

11  62; *Strunk*, 293 F. Supp. 2d at 1122.  A contrary rule "might compel the demanding government to

12  produce all its evidence . . . both direct and rebutting, in order to meet the defense thus gathered from

13  every quarter." *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y.

14  1883)).  The admission of explanatory evidence is largely within the discretion of the Court.  *See*

15  *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978); *Strunk*, 293 F. Supp. 2d at 1122.

16       In addition, courts routinely reject technical and affirmative defenses in extradition proceedings.

17  *See*, *e.g.*, *Bingham*, 241 U.S. at 517 (rejecting objections to extradition that "savor of technicality");

18  *Hooker*, 573 F.2d at 1368 (noting that extradition court "properly may exclude evidence of alibi, or facts

19  contradicting the government's proof, or of a defense such as insanity").  These issues, which require

20  factual or credibility determinations, are reserved for the courts in the requesting country to resolve after

21  the fugitive is extradited.

22       **D.**    **Rule of non-inquiry**

23       All matters raised by the fugitive as a defense to extradition, other than those related to the

24  requirements for certification, are to be considered by the Secretary of State, not by the Court.  *See* 18

25  U.S.C. §§ 3184, 3186.  For example, the Secretary of State should address a fugitive's contentions that

26  an extradition request is politically motivated, that the requesting state's justice system is unfair, or that

27  extradition should be denied on humanitarian grounds.  *Prasoprat*, 421 F.3d at 1016 (extradition judge

28  does not have authority to consider humanitarian objections to extradition); *Koskotas v. Roche*, 931 F.2d

MEMORANDUM OF EXTRADITION LAW AND REQUEST    8
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1  169, 173-74 (1st Cir. 1991) (motives of requesting state is a matter for consideration by the executive

2  branch); *Quinn*, 783 F.2d at 789-90 (noting that "the Secretary of State has sole discretion to determine

3  whether a request for extradition should be denied because it is a subterfuge made for the purpose of

4  punishing the accused for a political crime, or to refuse extradition on humanitarian grounds because of

5  the procedures or treatment that await a surrendered fugitive") (citation omitted).  This practice is

6  consistent with the long-held understanding that the surrender of a fugitive to a foreign government is

7  "purely a national act . . . performed through the Secretary of State." *See In re Kaine*, 55 U.S. 103, 110

8  (1852).

9  **II.     HALLEUX SHOULD BE DETAINED**

10     Just as extradition hearings follow unique procedures, the determination of whether to release a

11  fugitive on bail is also *sui generis*.  The federal statutes governing extradition in the United States, 18

12  U.S.C. §§ 3181 *et seq.*, do not provide for bail.  Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*,

13  does not apply because, as explained above, an extradition proceeding is not a criminal case.  *See*

14  *Kamrin*, 725 F.2d at 1228; *Martin*, 993 F.2d at 828.  Rather, case law provides that bail should be

15  granted in an extradition proceeding "only in the most pressing circumstances, and when the

16  requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir.

17  1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

18     **A.     Applicable law**

19         1.     <u>A strong presumption against bail governs in an international extradition</u>

20              <u>proceeding</u>

21     Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case."

22  *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see also Martin*, 993 F.2d at 827; *In re*

23  *Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1294 (S.D. Fla. 2017) ("[A]ny release of a

24  detainee awaiting extradition is largely antithetical to the entire process").  The Supreme Court

25  established this presumption against bail in *Wright v. Henkel*, explaining that when a foreign

26  government makes a proper request pursuant to a valid extradition treaty, the United States is obligated

27  to deliver the person sought after he or she is apprehended:

28  ///

MEMORANDUM OF EXTRADITION LAW AND REQUEST
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

9

1     The demanding government, when it has done all that the treaty and the law require it to

2     do, is entitled to the delivery of the accused on the issue of the proper warrant, and the

3     other government is under obligation to make the surrender; an obligation which it might

4     be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if

5     forfeited, would hardly meet the international demand; and the regaining of the custody

6     of the accused obviously would be surrounded with serious embarrassment.

7   190 U.S. at 62.

8     The prudential reasons for this presumption against bail in international extradition cases are

9   clear and compelling.  When, as here, a requesting country meets the conditions of the Treaty, the

10   United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive.

11   *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); *see also Wright*, 190 U.S. at 62.

12   It is important that the United States be regarded in the international community as a country that honors

13   its agreements in order to be in a position to demand that other nations meet their reciprocal obligations

14   to the United States.  Such reciprocity would be defeated if a fugitive flees after being released on bond.

15   *See Martinelli Berrocal*, 263 F. Supp. 3d at 1306 ("[O]ur Executive Branch has a vested interest in

16   enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the

17   future.  And a difficult but necessary measure in carrying out that responsibility is to secure a wanted

18   individual and surrender him or her to the foreign jurisdiction.").

19     2.     <u>Fugitives must be detained unless they establish "special circumstances" and also</u>

20     <u>demonstrate that they are neither a flight risk nor a danger to the community</u>

21     In light of the strong presumption against bail established in *Wright*, fugitives may not be

22   released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the

23   community, and (2) "special circumstances" warrant their release.  *See, e.g., In re Extradition of Kirby*,

24   106 F.3d at 862-63; *Leitner*, 784 F.2d at 160-61; *In re Extradition of Antonowitz*, 244 F. Supp. 3d 1066,

25   1068 (C.D. Cal. 2017); *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996).  "This

26   'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard

27   made applicable to domestic criminal proceedings by the Bail Reform Act."  *In re the Extradition of*

28   *Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

1    In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among

2    other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the

3    severity of the offense.  *See*, *e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1304; *In re Extradition of*

4    *Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that a "well-educated and

5    sophisticated" fugitive facing serious charges in foreign country had both the "incentive and ability to

6    flee" and therefore presented a flight risk).  Crucially, the special circumstances inquiry is separate from

7    considerations of danger to the community or risk of flight.  *See*, *e.g.*, *In re Extradition of Perez-Cueva*,

8    No. 16-0233M, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016) (special circumstances must exist in

9    addition to absence of risk of flight).  "Even a low risk of flight" is not a circumstance sufficiently

10   "unique" to constitute a special circumstance.  *Leitner*, 784 F.2d at 161; *see also Salerno*, 878 F.2d at

11   317-18 (lack of flight risk "is not a criteria for release in an extradition case").  Accordingly, a fugitive

12   who poses a danger to the community or a risk of flight should be denied bail, even in the face of special

13   circumstances.  *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

14   "Special circumstances must be extraordinary and not factors applicable to all defendants facing

15   extradition."  *Mainer*o, 950 F. Supp. at 294 (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36

16   (9th Cir. 1992)).  Courts have considered and rejected a lengthy list of would-be special circumstances,

17   including:

18   • The complexity of the pending litigation, *see*, *e.g.*, *Kin-Hong*, 83 F.3d at 525;

19
20   • The fugitive's need to consult with an attorney and/or participate in pending litigation, *see*, *e.g.*, *Smyth*, 976 F.2d at 1535-36;

21   • The fugitive's character, background, and/or ties to the community, *see*, *e.g.*, *In re*
22   *Extradition of Noeller*, No. 17-CR-664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017); *Beresford-Redman*, 753 F. Supp. 2d at 1089; *In re Extradition of Sidali*, 868 F.
23   Supp. 656, 658 (D.N.J. 1994);

24   • The fact that the fugitive may have been living openly, *see*, *e.g.*, *Leitner*, 784 F.2d at 160-61; *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D.
25   Fla. Nov. 16, 2009);

26   • Discomfort, special dietary needs, or medical concerns that can be attended to while
27   incarcerated, *see*, *e.g.*, *In re Extradition of Noeller*, 2017 WL 6462358, at *8-9; *Martinelli Berrocal*, 263 F. Supp. 3d at 1301-02; *In re the Extradition of Kyung Joon*
28   *Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

MEMORANDUM OF EXTRADITION LAW AND REQUEST          11
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see*, *e.g.*, *Antonowitz*, 244 F. Supp. 3d at 1072; *Matter of Knotek*, No. LA CV 13-9204-BRO (JCG), 2016 WL 4726537, at \*7 (C.D. Cal. Sept. 8, 2016); *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, *see*, *e.g.*, *Pelletier*, 2009 WL 3837660, at \*3-4 (allegedly well-respected businessman); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, *see*, *e.g.*, *In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see*, *e.g.*, *Salerno*, 878 F.2d at 318; *Antonowicz*, 244 F. Supp. 3d at 1070; and

- The availability of bail for the same offense in the requesting country, *see*, *e.g.*, *Antonowicz*, 244 F. Supp. 3d at 1070; *Kyung Joon Kim*, 2004 WL 5782517, at \*2; *Siegmund*, 887 F. Supp. at 1386-87.

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration.  Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

### B.    Analysis

The Court should detain Halleux without bond because he is a flight risk.  Halleux previously escaped from prison and has evaded Canadian authorities for almost forty years.  Allowance of bail in any amount would not guarantee Halleux's presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.

Halleux's risk of flight is sufficient for the Court to deny any forthcoming application for bail.  However, even if the Court were satisfied that he is not a flight risk, the government is unaware of any "special circumstances" that would justify bail in this case.  Should, however, the Court be inclined to grant bail in this case, the government respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances."

///

MEMORANDUM OF EXTRADITION LAW AND REQUEST
FOR DETENTION PENDING EXTRADITION PROCEEDINGS

1    **III.    CONCLUSION**

2            For the foregoing reasons, the United States requests that Halleux be detained pending

3    resolution of this extradition proceeding.

4

5    Dated:  February 25, 2020                                    McGREGOR W. SCOTT
                                                                 United States Attorney
6

7                                                       By:   /s/ QUINN HOCHHALTER
                                                              QUINN HOCHHALTER
8                                                             Assistant United States Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28